## STATE vs. CARL & TOBEY.

1. LIQUOR: *Sale on order. Place of Sale.*

Davidson, at Ozark, sent a written order to Carl & Tobey, merchants at Little Rock, to send him one gallon of whisky by the L. R. & Ft. S. Ry. Express company, C. O. D. Carl & Tobey delivered the whisky to the company C. O. D., as directed, and agreed that in case the whisky was not called for and charges paid within thirty days, the company might, at their option. return the same to Carl & Tobey and they would pay the freight both ways. Davidson received and paid for the whisky at Ozark, and Carl & Tobey were indicted for selling it at Ozark. HELD, that the sale was at Little Rock, and the defendants were not guilty.

APPEAL from *Franklin* Circuit Court.

Hon. G. S. CUNNINGHAM, Circuit Judge.

C. B. *Moore*, Attorney General, for the State.

It was a sale at Ozark. See *Benjamin on Sales,* 4th *Am.*

23———43

State v. Carl & Tobey.

*Ed., Vol.* 1, *Sec.* 309; *Ib., Chap. VI; Ib., p.* 52 *to* 64, *and p.* 469, *Sec.* 523, *p.* 501, *Sec.* 566, *Sec.* 587, *and p.* 472, *Sec.* 528; 2 *Kent Com.,* 477, 500; 78 *N. C.,* 313; 28 *Ark,* 550.

*Ratcliffe & Fletcher, Contra.*

The sale was at Little Rock. The express company was the agent of the vendee to receive and deliver the goods, and the agent of the vendor to collect the purchase price. A delivery to the carrier was a delivery to the vendee, and the sale was complete, the carrier being merely the agent to collect the price for the vendor, &c., &c. See 2 *Kent Com.,* (11*th Ed.*) *p.* 658, *et seq. and note (marg. p.* 492); 35 *Ark.,* 190, 305; 37 *Id.,* 483; 2 *Blackstone (Sharswood),* 446, (448), *note* 10; 24 *Maine,* 89; *Ib.,* 366; *Benjamin on Sales,* 315–16- 22, 181 *and note;* 362–72, *et seq.,* 399, 693; *Hutchinson on Carriers,* 389, *et. seg.;* 9 *Ark.,* 365; 26 *N. H.,* 418; 27 *Id.,* 217; 28 *Id.,* 379; 38 *Id.,* 1883; 97 *Mass.,* 8 9; 22 *W. Va.,* 743; 9 *R. I.,* 578; 11 *Reporter,* 278; 96 *Pa., St.; Benj. on Sales, Secs.* 322, 372, *et seq.,* 388; 73 *Maine,* 278; 71 *Ala.,* 368.

SMITH, J.—The indictment in this case charged that Carl & Toby, on the 15th day of November, 1883, sold intoxicating liquors within three miles of the Presbyterian Church in the town of Ozark, Franklin County, after the County Court of said County had made an order prohibiting the sale or giving away thereof, in accordance with the act of the Legislature, approved March 21, 1881, known as the "local option" statute.

At the trial the following was agreed upon as the facts in case:

"That Carl & Toby are, and had been for more than one year before the finding of the indictment in this case, merchants, doing business in the city of Little Rock,

Pulaski County, Arkansas, as partners, under the style of Carl & Toby, and had paid all the licenses required by law to carry on the business of wholesale and retail liquor dealers in said city and county, and at the time of the alleged sale, charged in the indictment, were in said city of Little Rock. That during the month of October, 1883, John Davidson, who then lived in Ozark, Franklin county, Arkansas, wrote a letter from Osark to Carl & Tobey, at Little Rock, which he forwarded to them by mail, to send one gallon of whisky by the Little Rock and Fort Smith Railway Express Company, a common carrier, doing business between Little Rock and Ozark,, 'C. O, D.' to him, the said Davidson, at Ozark. That in accordance with the directions of said Davidson, in said letter, Carl & Tobey, in the usual course of businsss at Little Rock, delivered to said express company, for said Davidson, one gallon of whisky, directed to said Davidson at Ozark, and took from the company a receipt, a copy of which is attached as part of the agreed statement of fact,—the purport of which was that Carl & Tobey were named as consignors, and Davidson as consignee, and after other stipulations, unnecessary to be mentioned, it contains a provision "that in case the goods were not called for and charges paid within thirty days, the company may, *at their option*, return the same to the consignors, who agreed to pay the freight both ways.' That the letters 'C. O. D.' mean collect on the delivery of the whisky by the express company at Ozark. That within a few days thereafter Davidson called at the office of the said company, at Ozark, and paid the agent of the company $2.50, which he supposed to be the price of the whisky due Carl & Tobey, and also all charges for carrying the whisky by the express company, and for returning the money to Carl & Tobey, and thereupon the whiskey was delivered to him by said agent. This was within three miles of the Presby-

terian Church at Ozark, and after the county court of Franklin County had made an order in accordance with the statute, prohibiting the sale of intoxicating liquors within three miles of said church. That Carl & Tobey in what they did had no intention to violate the law. That the receipt taken by Carl & Tobey from the express company, and made a part of this agreed statement, was never forwarded by them to Davidson, but was kept by them, and that they never notified Davidson that they had forwarded the whisky, and as a matter of fact Davidson did not know that that the whisky had been forwarded until he called for it at the express office at Ozark."

1. LIQUOR: Place of sale

Several declarations of law were asked by the State and refused; the purport of which was that the sale was a sale at Ozark; and several were asked by Carl & Tobey, and given by the court, the purport of which was that the sale was at Little Rock. The defendants were acquitted and the State appealed. The leading question now before this court is as to the place of sale.

In determining this question the most material inquiries are, when and where was it that the minds of these parties met and assented to the same thing; and at what point was it that the goods ordered were set apart and delivered to the purchaser.

"When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute, as between the parties, without actual payment or delivery, and the property and the risk of accident to the goods vests in the buyer. He is entitled to the goods on the payment or tender of the price, and not otherwise, when nothing is said at the sale as to the time of delivery, or time of payment. The payment or tender of the price is in such cases a condition precedent, implied in the contract of sale, and the

buyer cannot take the goods or sue for them without payment; for though the vendee acquires a right *of property* by the contract of sale, he does not acquire a right *of possession* of the goods until he pays or tenders the price." 2 *Kent's Comm.*, 12 *Ed.*, * 492.

It is plain that the only agreement to sell, or act of sale, was at Little Rock. It was there that Davidson's order, transmitted through the mail, reached the defendants, and it was there that they consented to fill his order. Hence the first existence of the contract would be when the defendants at Little Rock assented to his proposal. *Fuich vs. Mansfield*, 97 *Mass.*, 89; *Shriver v. Pittsburgh*, 16 *P. F. Smith*, 446.

In *Taylor vs. Shipman*, 33 *Iowa*, 194, S. C., 11 *Am. Rep.*, 118, a salesman for an Illinois house, while in Iowa, took an order for liquors, which his house filled by shipping the liquors to the purchaser in Iowa, he to pay charges and take risks. This was held to be an Illinois contract. And the court said: "It is well settled that to constitute a contract requires both the making and the acceptance of a proposition; that is, there must be a concurrence of two minds upon the same thing. Where an order or offer is made by letter, it does not constitute a contract until it is accepted. When it is accepted, and the letter containing the acceptance is placed in the mail, the contract as specified in the order or offer, is complete; and it is very plain, upon principle, that the contract is made where it is accepted, and not where the offer was made; for it is there that the two minds meet upon the same thing and the contract is consummated. This has been so adjudicated. *McIntyre vs. Parks*, 3 *Metcalf*, 207; *Whiston vs. Stodder*, 8 *Mart. (La.)*, 132. The same principle is illustrated by the cases of *Hill vs. Spear*, 50 *N. H.*, 253; *S. C.,* 9 *Am. Rep.*, 205; *Boothby vs. Plaisted*, 51 *N. H.*, 436; *S. C.*, 12 *Am. Rep.*, 140 ; *Lynch vs. O'Donnell*, 12

*Mass.*, 311; *Ely vs. Webster*, 102 *Mass.*, 304; *Brockaway vs. Maloney, Ib.*, 308.

It remains to be considered where the liquor was set apart and delivered to the purchaser. In *Alberger v. Marrison*, 102 *Mass.*, 70, a New York dealer, while in Massachusetts, took an order for liquors to be shipped to a citizen of Massachusetts, and the dealer selected the goods and placed them on board of the cars in New York, directed to the buyer in Massachusetts, who paid the freight. This was held to be a New York contract, because the title would not pass so long as anything remained to be done to identify the goods sold and there was no appropriation of particular property under the contract until the dealer's return to New York. To the same effect is *Dolan v. Green*, 110 *Mass.*, 322.

In *Garbracht v. Commonwealth*, 96 *Pa., State*, 449, a travelling agent for a licensed liquor dealer in Erie solicited and received orders for whisky in Mercer county. The orders were transmitted to his employer in Erie, and by him the whisky was shipped, by freight or express, consigned to the respective parties from whom the orders were received. The agent was indicted and convicted in Mercer county for selling liquor without a license. And it was held that he was improperly convicted, as Erie, and not Mercer county, was the place where the sales were made and the place of delivery. This is upon the principle that the place of sale is the point at which goods ordered or purchased are appropriated and delivered to the purchaser, or to a common carrier, who, for the purpose of delivery, represents him.

"It is well settled that the delivery of goods to a common carrier, *a fortiori*, to one specially designated by the purchaser, for conveyance to him or a place designated by him, constitutes an actual receipt by the purchaser. In such cases, the carrier is, in contemplation of the law, the bailee

State v. Carl & Tobey.

· of the person *to* whom, not *by* whom the goods are sent, the latter in employing the carrier being considered as an agent of the former for that purpose."—*Benjamin on Sales, First Am. Ed., pp,,* 130, 514.

This is certainly the general rule and controls this case, unless the fact that Davidson was to pay for the whiskey when it was delivered to him at Ozark, varies its operation.

The only case to which we have been referred which is precisely in point is *Pilgreen v. State,* 71 *Ala.,* 368. There the conviction was had ander a statute rendering it unlawful to sell intoxicatiog liquors within five miles of certain churches in Columbiana. The defendant was a licensed liquor dealer, doing business at Calera, twelve miles distant. He received by mail an order from one Dollar, requesting him to send to Columbiana a half gallon of whisky by the Southern Express Company, marked C. O. D. The defendant filled the order at Calera, delivered the whisky to the express company, and by the company it was delivered to Dollar at Columbiana, where he paid the price and all charges to the company, from whom the defendant received the price at Calera. And the decision was that Calera was the place of sale. Brickell, C. J., delivering the opinion of the court, said: "All the dealings between buyer and seller were at Calera. There the offer of the buyer was received, accepted and acted upon, and there every act was done which it was intended the seller should do. The general property in the thing sold there passed to the buyer by the delivery to the carrier of his own appointment, though he could not entitle, himself to possession until he paid the price to the carrier. The carrier was his agent to receive the thing sold at Calera, and was the agent of the seller to receive the price. It would have been a neglect of duty as a collecting agent, rendering the express company liable to the seller, if there had been a delivery of the whisky with-

out payment of the price; and if possession had been wrongfully obtained, it may be, the seller could have reclaimed it. The general property, however, passed to the buyer by the delivery to the express company at Calera; the risk of loss then passed to him; though there may have remained in the seller a special property, and though the buyer could not, without payment of the price, entitle himself to the absolute property and to the actual possession. * * * * * The seller has a lien on the property for the price and the right of possession until it is paid·"

In *State v. Intoxicating Liquors*, 73 *Me.*, 278, the claimant had sent an order to a firm in Boston for whiskey to be forwarded by Express, C. O. D., to him at Winthrop, in Maine. The whiskey was sent as ordered. Immediately upon its arrival, the package was seized as liable to confiscation under the Maine liquor law. The claimant tendered the charges to the express company, and intervened in the legal proceedings, claiming the package. The court said:

"Undoubtedly the initials, C. O. D., meant collect on delivery; or, more fully stated, deliver upon payment of the charges due the seller for the price, and the carrier for the carriage of the goods. These initials have acquired a fixed and determinate meaning, which courts and juries may recognize from general information. * * * Here, then, was a sale of the property to the claimant, the price payable on delivery. * * * The title passed to the vendee when the bargain was struck. Any loss of the property by accident would have been his loss. The vendor had a lien on the goods for his price. * * * In this case both the seller and purchaser had a qualified right of possession; the seller upon the purchaser's neglect or refusal to pay for the goods, and the buyer by paying for the same."

Judgment affirmed.