[No. 1326.]

## W. E. WEST, APPELLANT, v. W. C. HUMPHREY ET ALS. RESPONDENTS.

SALE—DELIVERY—PASSING OF TITLE.—An agent bought for his principals all of the ores produced at a mine to be delivered when loaded on the wagon at the mine. Ores were loaded and delivered to a carrier, consigned to the agent, and a bill of lading in the agent's name was sent to him. *Held*, that the title passed to the principals when the ores were delivered to the carrier.

CARRIER—FOR WHOM BAILEE.—Under such a state of facts as exist in this case the carrier is the bailee of the consignee and not of the consignor.

REPLEVIN—PRACTICE.—When the plaintiff in an action of replevin has introduced evidence showing that he had purchased the property and became vested with the legal title thereto, the defendants cannot raise the question of fraud in the sale, or of want of delivery, until they have shown some right or interest in the property, or some lien upon it that entitles them to attack the sale. (Concurring opinion of Bigelow, J.)

APPEAL from the District Court of the State of Nevada, Nye county.

*Thomas H. Wells*, District Judge.

The facts are stated in the opinion.

*David S. Truman*, for Appellant.

I.    The non-suit was improperly granted. Appellant had proved both his ownership of the ores and his right to their immediate possession. (*Minturn* v. *Burr*, 16 Cal. 107; *Frost* v. *Mott*, 34 N. Y. 253.)

II.    It can make no difference whether the bill of sale was made to West or to his principals, as West testified that all of his acts were done as an agent for the party claiming to be his principal. (*McBeth and Bollen* v. *Vansickle*, 6 Nev. 134; *Western Devel. Co.* v. *Emery*, 61 Cal. 611; *Chin Kem You* v. *Ah Joan*, 75 Cal. 124; *Bayley* v. *Onondaga Mut. Ins. Co.* 6 Hill. 476; *Gilpin* v. *Howell*, 45 Am. Dec. 720; *Foster* v. *Smith*, 88 Am. Dec. 604; *Tainter* v. *Lombard*, 53 Me. 369; *Ilsey* v. *Merriam*, 44 Am. Dec. 721; *Pitts* v. *Mower*, 18 Me. 361; *Plano Mfg. Co.* v. *Burrows*, 40 Kan. : 61; *Wilson* v. *Me-Ne-Chas*, 20 Pac. Rep. 468.)

III.    The delivery was sufficient and West's principals have the right to claim that the delivery was for their benefit. (*Wells, Fargo & Co.* v. *Robinson*, 13 Cal. 134; *George* v. *Ransom*, 14 Cal. 660; *Simson* v. *Eckstein*, 22 Cal. 593.)

IV.    No right of property or lien existed in severance and the defendants were trespassers in all of their acts. (*Lawrence* v. *Burnham*, 4 Nev. 366; *Gray* v. *Sullivan*, 10 Nev. 416: *Gaudette* v. *Travis*, 11 Nev. 149; *Wetzell* v. *Powers et al.* 5 Mont. 214; *Walsh* v. *Blakley*, 6 Mont. 194; *Bailey* v. *Johnson*, 9 Colo. 365; *Allen* v. *Agee*, 15 Or. 551; *Bank* v. *McAndrews*, 7 Mont. 150; *Magruder* v. *Gage*, 33 Md. 344; *First Nat. Bank* v. *Dearborn*, 115 Mass. 219; *Holbrook* v. *Wright*, 24 Wend. 169; *Nelson* v. *Chicago R. R. Co.*, 2 Ill. App. 180; *Valle* v. *Cerre's Administrators*, 36 Mo. 575.)

*J. T. Lamb* and *Benj. Curler*, for Respondents.

(No brief on file.)

By the Court, MURPHY, J.:

This action was brought to recover certain personal property,

consisting of concentrates, or their value.    The defendants had judgment of non-suit.

It appears from the record that W. J. Chamberlain and Frank Dillingham, of Denver, Colo., were partners doing business in buying and smelting ores and concentrates in this state, under the firm name of W. J. Chamberlain & Co.; that W. E. West was their agent in this state, and that as such agent, in the month of September, 1889, he entered into an agreement with J. E. Severance to purchase all the ores and concentrates for Chamberlain & Co. that Severance could produce from the Barcelona mine, which mine Severance was working under a lease. The ores and concentrates were to be delivered to Chamberlain & Co. when loaded on the wagon at the Barcelona mine.    Some ores and concentrates had been delivered under the agreement to West.    On or about the 20th day of November, 1889, Robert Scott, a teamster and freighter, loaded seven or eight tons, more or less, of concentrates from the Barcelona mine, at the request of Severance, to be by Scott delivered to West at Ledlie, West to pay the freight charges.    On the 23d day of November, 1889, West paid Severance $1,200 on the concentrates.    On the 25th of November, 1889, and after the said concentrates had been loaded and in transit on Scott's wagons to West, and while Scott was at the town of Belmont, seven miles from where the concentrates had been loaded, the defendant Brougher, as sheriff of the county of Nye, under and by virtue of a writ of attachment sued out in the case of W. C. Humphrey against J. E. Severance, seized the property in dispute as the property of J. E. Severance.    The following exhibits were put in evidence by plaintiff:

"A."   " Belmont, Nevada, November 20, 1889.    This certifies that I have this day sold to W. E. West, manager of the Ledlie sampling works (11) eleven tons of concentrates and ore (more or less), now being loaded on Scott's team; consideration ($1,200) twelve hundred dollars.    J. E. Severance.

Friend West:   I think the above is all that is necessary, and all that you require as a bill of sale.    I shall leave for Austin on next stage, so you may hold money until my arrival.    Yours, truly, J. E. Severance.

" B."    Austin, Nevada, November 23, 1889.    Received of W. E. West, manager, account concentrates in transit, the sum of

one thousand two hundred and seventy-five dollars for eleven
tons, more or less.    J. E. Severance."

Exhibit C is a bill of sale and assignment from Chamberlain
& Co. to West, the plaintiff.

We will not in this opinion consider the errors assigned by
the counsel for plaintiff to the refusal of the judge to sustain
his objections to questions asked the several witnesses.    We
shall confine ourselves, therefore, to the other error alleged,
to-wit, the question of non-suit, for the reason, as assigned by
the judge, "that the testimony of the plaintiff did not show
that Chamberlain & Co. were the owners of the property in con-
troversy at the time of the levying of the attachment.    The bill
of exceptions shows that the motion for non-suit, which the judge.
sustained, was founded upon the theory that the sale of the prop-
erty under the contract made in the month of September, 1889,
between West, acting as the agent for Chamberlain & Co., and
Severance, was not a *bona fide* sale of the property, and
the bill of sale in evidence, marked 'Exhibit A,' shows
that the property in dispute was sold by J. E. Severance
to W. E. West, November 20, 1889, and that the property
was in transit at the time of the sale, and that a portion of
the concentrates were not in existence at the time of the pre-
tended sale."    We think the non-suit should not have been
granted.

The testimony of the plaintiff shows that there was an agree-
ment between Severance and the agent of Chamberlain & Co.
in the month of September, 1889, whereby all the ore and con-
centrates produced from the Barcelona mine was sold to
Chamberlain & Co., and was to be delivered to them when
loaded on the teams at the Barcelona mines.    There had been
one or more loads delivered under that agreement, and West
testified that all his acts during the entire transaction were for
and on behalf of his principals, Chamberlain & Co., and not for
himself.    Upon this state of facts, and no testimony in the rec-
ord to contradict them, the mere fact that Severance wrote upon
a piece of paper what purported to be a bill of sale to West
could not change the original agreement without the consent of
West or Chamberlain & Co.    The right to rescind was neither
exercised nor claimed by either of the parties to the agreement,
nor is West's right to act as agent for Chamberlain & Co. ques-
tioned; and when he received the paper purporting to be a bill

of sale, made in his name, in law it was for the use and benefit of Chamberlain & Co. A person who agrees to act for another is not allowed to deal in the business of the agency for his own benefit; and, if he takes a conveyance in his own name of property which he agrees to purchase for another, he will be considered as holding the property in trust for his principal. The fact that the property was in transit at the date of the paper purporting to be a bill of sale, or that a portion of the property was not in existence at the date of the sale, is of no avail to the respondents.

It appears from the evidence adduced at the hearing that the property was in the possession of the carrier seven miles from the Barcelona mine, and that it had been paid for by West before the levying of the attachment. Such being the case, Severance did not own the property at the date of the levy, without it could be made to appear that he had parted with the property to hinder, delay or defraud his creditors, which question is not before us. The ownership of the property was to pass when loaded on the wagons at the Barcelona mine. The vesting of the title to property always depends on the intention of the parties, to be derived from the agreement and its circumstances. As long as the ore remained at the Barcelona mine, Chamberlain & Co. had no interest in it; but when the ore was put into sacks, placed in the wagon, delivered to the carrier, and he directed to deliver the property to West, what was up to that time a mere executory contract of sale became an actual or executed sale, and the title to whatever ore was placed in the wagon passed to Chamberlain & Co.

"Where the buyer had purchased, in advance, all the crop of peppermint oil to be raised and manufactured by a farmer, the property passed to the buyer in all the oil which had been put by the farmer into the buyer's bottles and weighed, although never delivered to him." (*Langton* v. *Higgins*, 4 Hurl. & N. 409.)

In the case of *Aldridge* v. *Johnson*, reported in 7 El. & Bl. 885, "plaintiff agreed with K. to purchase from K. 100 out of 200 quarters of barley, which plaintiff had seen in bulk and approved of, and he paid part of the price. It was agreed that plaintiff should send sacks for the barley, and that K. should fill the sacks with the barley, take them to a railway, place them upon trucks free of charge, and send them to plaintiff. Plain-

tiff sent sacks enough for a part only of the 100 quarters; these K. filled; and also endeavored to find trucks for them, but was unable to do so.   K. finally detained the barley, and emptied it from the sacks back into the bulk.   K. having become bankrupt after he had emptied the barley from the sacks into the bulk, and the defendant, his assignee, having removed the whole together:   Held, by the whole court, that this was a conversion, by the assignee, as to the part put into the sacks, and the plaintiff should recover that quantity."

. In cases like the one under consideration, the carrier is the bailee of the person *to* whom, not *by* whom, the goods are sent; the latter, in employing the carrier, being considered as the agent of the former for that purpose. (Benj. Sales, Secs. 181,. 693; *Burton et al.* v. *Baird*, 44 Ark. 556; *State* v. *Carl et al.*, 43 Ark. 353; *Herron* v. *State*, 10 S. W. Rep. 26; *Kline* v. *Baker*, 99 Mass. 254; *Schmidt* v. *Nunan*, 63 Cal. 373.)

The judgment will be reversed and cause remanded.


BIGELOW, J., concurring.

I concur.   The plaintiff's evidence shows that the sale of the concentrates was made to Chamberlain & Co., and not to West. West was acting merely as their agent, and even if the contract of sale had been made in his name, which it was not, it is always permissable to show that it was for the use and benefit of his principals.   This was shown here.   (*Ruiz* v. *Norton*, 4 Cal. 355; *Huntington* v. *Knox*, 7 Cush. 371.)

As West is the plaintiff, and the one to whom the defendants claim the concentrates were sold, it would make no difference whether sold directly to him, or first to Chamberlain & Co., and then by them to him, were it not that the complaint has specially alleged the deraignment of title through them.

The plaintiff's evidence tended to prove that J. E. Severance had been the owner of the concentrates; that before they were extracted from the mine he had made an agreement to sell them to Chamberlain & Co.; that after they were extracted, he made a bill of sale to them, and they had fully paid him for them. This was certainly sufficient to vest the title in them, and authorize them to maintain an action for their possession as against a trespasser or stranger, without regard to whether there was any fraud in the sale or had been any delivery—want

of delivery being also one of the grounds upon which the motion for non-suit was made, and granted. These questions are only material when the contest is between a purchaser and a creditor of the vendor having a lien by attachment or otherwise. (*Thornburgh* v. *Hand*, 7 Cal. 554; *Bump, Fraud. Conv.* 443, 511.) As the defendants had not yet come to their side of the case, there was, of course, no proof that either of them was a creditor of the vendor, or that any attachment had been issued, or any attempt made to levy the writ upon the property in dispute. When the motion was made, it only appeared that the title to the property had vested in the plaintiff; that he was consequently entitled to its possession; and that the defendants detained it from him. This, certainly made a *prima facie* case. As the case then stood, the defendants were merely strangers and trespassers. Until they had shown some right or interest in the property, it was no concern of theirs whether there was fraud in the sale, or had been any delivery, nor could the question be raised. (*Packard* v. *Wood*, 4 Gray, 307; Benj. Sales, Sec. 675.)