HARPER v. STATE.

Opinion delivered June 28, 1909.

1. LIQUORS—SALE TO MINOR—INTENT.—Under Kirby's Digest, § 1943, providing that "any person who shall sell * * * any liquors to any minor * * * shall be deemed guilty of a misdemeanor," etc., one who sells liquor to a minor is guilty though he honestly believed that the minor was of full age. (Page 424.)

2. SAME—PLACE OF SALE.—Where an order for liquor was mailed from another State to a dealer in a city in this State, with request that the goods be shipped by the evening train, and the dealer shipped the goods by train from such city, consigned to the purchaser, the sale was made in this State. (Page 425.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

*Brizzolara & Fitzhugh,* for appellant.

1. Neither of defendants personally, or through their employees, ever sold liquor to the minor in Arkansas. The order came through the United States mail, and defendants had no knowledge or information that the purchaser was a minor. It was not a crime. 47 Ark. 555. The railroad was the agent of the purchaser. 45 Ark. 361; Black on Intox. Liquor, § 422.

2. The railroad was not the agent of the purchaser, and there was no delivery in Arkansas, and hence no sale in Arkansas: (1) Because defendants did not ship by the carrier nor in the manner named by the purchaser. (2) Because the vendor agreed to deliver the goods and prepaid the freight. Benjamin on Sales, 153; 141 Mass. 593; 88 Ark. 269; 24 Am. & E. Enc. L., 1071, 1075; 2 Benj. on Sales, § 1196, 1186, 1181; 37 Ark. 483; 31 *Id.* 155; 58 Ga. 56.

3. The delivery to a common carrier was not a delivery to the vendee in Arkansas. Benjamin on Sales, 156; 2 Wharton, Conf. Laws, (3 Ed.) § 486 a; 141 Mass. 364; 113 *Id.* 391; 91 Iowa, 109; 3 Page on Cont., § 1728.

*Hal L. Norwood,* Attorney General, *C. A. Cunningham,* Assistant, for appellee; *June P. Wooten,* of counsel.

1. It matters not whether they had knowledge or information that the purchaser was a minor. They were bound to determine for themselves, at their peril, whether or not he was

a minor. Black on Intox. Liquor, § 418; 36 Ark. 58; 37 *Id.*
108; *Ib.* 219; *Ib.* 399; 45 Ark. 361.

2. The sale was complete by delivery to the carrier at Fort
Smith. 3 Page on Cont., § 1728; 116 Iowa 711; 51 Ark. 133; 43
*Id.* 353; 50 *Id.* 20; 44 *Id.* 556; 88 Ark. 269; 1 Benj. on Sales,
§ 181.

FRAUENTHAL, J. The defendants, George W. Harper and
C. P. Wilson, were convicted of the offense of selling ardent
liquors to a minor in the Fort Smith   District of Sebastian
County; and they have taken an appeal from that conviction
to this court.

The evidence tended to establish the following facts: The
defendants are licensed wholesale and retail liquor   dealers,
doing business in the city of Fort Smith, Arkansas.   Chris-
topher Russell is a minor about 15 years old residing at Warner
in the State of Oklahoma, a station on the Midland Valley Rail-
way 85 miles west of Fort Smith.   On September 17, 1908,
Christopher Russell, seeing a circular advertisement of defend-
ants, sent to defendants a letter, in which he made an order for
one gallon of whisky.   The letter is as follows:

"Warner, Okla., September 17, 1908. ·
"Harper and Wilson.

"Enclosed you will find $3.00 for which please send me one
(1) gallon of rock and rye whisky.  I want 8 shorts.  Be sure
and send on the evening train today.    Your customer,

"Christy Russell,
"Warner, Okla.

"Don't fail to send on evening train."

The three dollars sent in the letter was a sufficient amount
to pay for the whisky and the charges for carriage from Fort
Smith to Warner.  The defendants did not know Christopher
Russell, and did not know that he was a minor, but they accepted
the order, and on September 18, 1908, they delivered to the
Midland Valley Railway, a common carrier, at Fort Smith,
Ark., a gallon of whisky, duly addressed to Christopher
Russell at Warner, Oklahoma; and at their request the carrier
executed a bill of lading for the whisky in which Christopher
Russell was named as consignee.  The whisky was shipped
by freight train, and the defendants paid the freight.  It appears

that there is a passenger train leaving Fort Smith on this railroad in the afternoon, and which arrives at Warner about 7 o'clock P. M., and that express packages are carried on this train, but ordinarily no freight.   Christopher Russell got the whisky at the depot at Warner.

It is contended by defendants that they cannot be convicted of this offense of selling intoxicating liquors to a minor, for the reason that they did not know that Christopher Russell was a minor; that on this account they had no criminal intent, and therefore could not be guilty of a criminal offense.

The statute under which the defendants were convicted provides that "any person who shall sell or give away, either for himself or another, or be interested in the sale or giving away of, any ardent, vinous, malt or fermented liquors.   *   *   *   * to any minor," shall be guilty of a misdemeanor.   Kirby's Digest, sec. 1943.   The words "knowingly or wilfully" or words of like import do not appear in this statute.   The offense is complete when the sale is made to a minor, and the guilty intent is not an essential ingredient of the offense.   There are some courts that hold that in prosecutions of this nature the absolute good faith of the seller and his ignorance of the minority of the buyer is a good defense.   But the principle adopted by this court and enunciated by Chief Justice ENGLISH is that vendors of intoxicating liquors are bound to "determine for themselves at their peril whether or not the purchaser is a minor; for, if they sell to one who is a minor, they are criminally liable, notwithstanding they are actually ignorant of the fact and honestly believed the person is of full age."   *Redmond* v. *State,* 36 Ark. 58; Black on Intoxicating Liquors, § 418.

In the opinion delivered by Chief Justice ENGLISH some of the reasons are given for that ruling and that determination of the effect of this statute.   Those reasons appear to us manifest and sound; and the result of such ruling is to effect a proper enforcement of a public policy announced by this statute against the selling or giving away of intoxicating liquors to a minor.

This decision has been followed by this court in a number of cases, and we can see no good or wholesome reason for changing it.   *Crampton* v. *State,* 37 Ark. 108; *Edgar* v. *State,* 37 Ark. 219; *Pounders* v. *State,* 37 Ark. 399.

It is urged that, inasmuch as the common carrier was the agent of the minor and the liquor was purchased through such agent, in such event the defendants would not be guilty if they did not know or have any reasonable grounds of knowing that they were selling to a minor. And they cite *Gillan* v. *State,* 47 Ark. 555, to sustain that contention. But in that case the vendor sold directly to a negro, and made no contract with the minor. It subsequently developed that the minor had sent the negro to purchase the whisky for him. But there was no actual agreement on the part of the vendor to sell to the party who was the minor; and, as far as the vendor was concerned, the sale was made by him to the negro. In this case the defendants actually sold and intended to sell the liquor to Chrictopher Russell, the minor, and they simply were ignorant at the time of the fact that he was a minor.

It is contended that the sale in this case did not take place at Fort Smith but at Warner, Oklahoma; that this is true because the delivery of the whisky was made to Russell at Warner and not at Fort Smith. The sale occurred at the place where the contract and delivery were actually made. The contract of sale, like all other contracts, consists of an agreement between the parties and in addition thereto a delivery of the chattel. In this case the minor sent a letter to the defendants making an offer to buy the liquor, and this letter was received by the defendants at Fort Smith, and at that place the offer was accepted by them. When they accepted the offer, the contract was entered into, and the place of the agreement was therefore at Fort Smith. The defendants thereupon at Fort Smith appropriated and segregated from their stock the gallon of whisky, and delivered same to a common carrier at Fort Smith duly addressed to the minor, and went further and obtained a bill of lading for the whisky from the carrier for the minor, in which the minor was named as the consignee. Now, it is uniformly held that the delivery of goods to a common carrier, when made in pursuance of an order to ship, is in effect a delivery to the consignee; and more especially is this true when the title to the shipment, as evidenced by the bill of lading, is made in the name of the consignee. *State* v. *Carl & Tobey,* 43 Ark. 353; *Burton* v. *Baird,* 44 Ark. 556; *Berger* v. *State,*

50 Ark. 20; *Gottlieb* v. *Rinaldo*, 78 Ark. 123; *Templeton* v. *Equitable Mfg. Co.,* 79 Ark. 456; 1 Mechem on Sales, § 736, 739; Tiedeman on Sales, § 95.

The buyer in the first instance may designate the particular carrier by whom the goods are to be transported; but in event the contract of purchase is silent as to the particular carrier then a delivery by the vendor to a common carrier in the usual and ordinary course of business transfers the property to the vendee. *Templeton* v. *Equitable Mfg. Co.,* 79 Ark. 456.

It is urged that the buyer in this case by said letter directed that the whisky be sent by an express company, and not by the Midland Valley Railway. But this does not follow from the terms of the letter. The Midland Valley Railway, so far as the evidence shows, was the only common carrier of goods from Fort Smith to Warner; and, even if the request in the letter to send on evening train could be considered to be a direction to send by express, there is no evidence that the railway company did not itself carry express packages on its trains, or that there was a separate and distinct carrier that transported goods on the evening train. But we are of the opinion that the request in the letter that the whisky be sent on the evening train of the same day was only made and intended by the buyer for the purpose of obtaining the whisky as speedily as possible, and was not made as a designation of a particular carrier to transport the goods.

The defendants by their actions showed that they understood it in that way, for they proceeded in the ordinary and usual course of their business and delivered the whisky to the Midland Valley Railway within a reasonable time after receiving the order. And this is what in fact and in law the request in the letter amounted to. 24 Am. & Eng. Ency. Law, (2nd Ed.) 1075.

In this case the sellers accepted the order in Fort Smith, and at that place received the money and delivered the goods to a common carrier, whom they selected in good faith and in the ordinary course of business, and not contrary to any direction made by the buyer. They not only delivered the goods to the carrier without any qualifications or restrictions, but in the bill of lading had the carrier name the buyer as the consignee. The delivery thus became complete, and the title to the whisky

thereupon passed to the minor, and that took place at Fort Smith; and therefore the sale was completed at that place.

The rulings of the court in giving and refusing instructions were based upon the law as above announced. We find no error in these rulings of the court. The evidence sustains the verdict. The judgment is accordingly affirmed.