## JACOBS *v.* STATE.

### Opinion delivered October 2, 1922.

1.  AGRICULTURE—SELLING INFECTED NURSERY STOCK.—In a prosecution for selling and offering for sale nursery stock infected with a disease in violation of a rule of the State Plant Board promulgated pursuant to Acts 1917, p. 1904, No. 414, prohibiting the sale of infected nursery stock, the State was not required to show that the sale was made with knowledge that the trees were so infected.

2.  AGRICULTURE—RULE OF PLANT BOARD.—A rule of the State Plant Board prohibiting the sale of infected nursery stock, promulgated pursuant to Acts 1917, p. 1904, No. 414, has the force and effect of a statute and should be construed as if it were one.

3. CRIMINAL LAW—VENUE.—In a prosecution for selling infected nursery stock in violation of the rule of the State Plant Board promulgated under Acts 1917, p. 1904, No. 414, the sale must be shown to have been made in the county where the venue was laid.

4. CRIMINAL LAW—SALE OF INFECTED NURSERY STOCK—VENUE.— Where, pursuant to a mail order for nursery stock, the seller delivered the stock to the carrier for shipment to the buyer in an adjoining county, the sale took place in the county in which the delivery was made to the carrier, and not in the county in which the buyer received the shipment, though the buyer reserved the right to return the shipment if the stock should be infected.

Appeal from Washington Circuit Court; *W. A. Dickson,* Judge; reversed.

*Walker & Walker,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

SMITH, J. Appellant was convicted under an indictment charging that he "did unlawfully sell and offer for sale certain nursery stock called apple trees, which were then and there infected with a disease called crown gall, and he, the said T. L. Jacobs, then and there well knowing that said apple trees aforesaid were so infected with said disease called crown gall * * *."

It is first insisted, for the reversal of the judgment, that the testimony did not show knowledge that the trees sold were infected with crown gall. In response to this insistence it may be first said that the instructions to the jury required a finding of knowledge and told the jury to acquit unless this finding was made, and the verdict is not without testimony legally sufficient to support it under this requirement. But it may be further said—and we put the decision of the point under consideration on that ground—that the State was not required to show criminal intent.

The General Assembly of 1917 passed an act entitled "An act to prevent the introduction into and the dissemination within the State of insect pests and diseases injurious to plants and plant products of this State, to

create a State Plant Board, and to prescribe its powers and duties." Act 417, vol. 2, Acts 1917, p. 1904.

This act requires the board there created to make rules and regulations found necessary to promote the purposes of the act, and provides for the imposition of a fine not exceeding $100 against any one violating such rules and regulations. One of the rules so promulgated provides that certain "insect pests and plant diseases and nursery stock infested or infected therewith are declared to be public nuisances of such nature that their dissemination should be prevented," and the infection of crown gall is among those thus included, and the sale or shipment of such infected nursery stock is prohibited.

This rule has the force and effect of a statute and should be construed as if it were one. *Howard v. State,* 154 Ark. 430.

In the case of *Wells Fargo & Co. Express v. State,* 79 Ark. 349, a conviction was had against a common carrier exporting a shipment of game beyond the State. The express company defended upon the ground that it had no knowledge that the package tendered for shipment contained game; but the court held this was no defense, and, in doing so, quoted from the Supreme Court of Michigan as follows: "Judge COOLEY, while Chief Justice of Michigan, and speaking for the court said: 'Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require. a degree of diligence for the protection of the public which will render violation - impossible.' *People v. Roby,* 52 Mich. 579, s. c. 50 Am. Rep. 270." See also *McClure v. State,* 37 Ark. 426; *Brittin v. State,* 10 Ark. 299; *Redmond v. State,* 36 Ark. 58; Annotation to case of *People v. Johnson,* 4 A. L. R. 1535, 288 Ill. 442, 123 N. E. 543.

It is further insisted that the undisputed evidence shows that the sale occurred in Benton-County, whereas the indictment alleges the sale occurred in Washington County. The evidence on the question of venue is as

follows. Appellant is a nurseryman, and his place of business is at Rogers, in Benton County, and he advertised his business in newspapers circulating in that and the adjoining counties. F. F. Copeland is a resident of Cane Hill, in Washington County, and on March 9, 1921, he wrote appellant the following letter:

"Cane Hill, Arkansas, March 9, 1921.

"Gentlemen: Find inclosed money order for $51.20 for which ship, by prepaid express, to Lincoln, Arkansas, the following: (Then follows list of trees desired). Notify me at Cane Hill, Arkansas, R. F. D. 1.

"Respectfully yours,

"F. F. COPELAND."

Pursuant to this letter, appellant shipped the trees ordered to Copeland at Lincoln, and while the trees were in the express office at Lincoln they were inspected by the chief inspector of the State Plant Board and found to be infected with crown gall. Copeland was notified of that fact by the inspector, and thereupon wrote the following letter:

"Cane Hill, Arkansas, March 17, 1921.

"Benton County Nursery Co.,

"Rogers, Ark.

"Gentlemen: I was informed this morning that the trees you shipped me was at Lincoln and had been inspected there by George G. Becker, State inspection agent, and pronounced from 35 to 40 per cent. diseased, and not fit for use, so will leave them there subject to your orders, as I can't use the diseased stock, but will say further if you can supply. stock free from disease, good healthy stuff that will stand inspection, and send them at once, I will still take the trees as ordered, otherwise return my money. I am advised by Mr. Becker to make this move, he also advised me to notify him as to results; he cut off some 15 or 20 roots from stock shipped and carried some off with him, and said whole thing was in bad condition so my notice said.

"Hoping to hear from you at once, I remain,

"Yours truly,

"F. F. COPELAND, Cane Hill, Ark."

Pursuant to this letter, appellant shipped the trees there referred to from Rogers, in Benton County, to Copeland at Lincoln, in Washington County; and while the second shipment was never officially inspected, there was testimony from which the jury might have found that trees embraced in this second shipment were also infected. Copeland accepted this second shipment, took the trees from the express office to his home and planted them.

It is conceded by the Attorney General that if the sale was completed in Benton County, the judgment must be reversed; but it is insisted that the letter set out above made the sale a conditional one, which was not completed until the arrival of the trees at Lincoln and their inspection and acceptance at that place. Is this true?

It will be borne in mind that the particular regulation of the State Plant Board which appellant is charged with having violated is that of selling trees infected with crown gall. The conviction cannot be sustained unless the sale was shown to have been made in Washington County, where the venue was laid.

We have a number of cases which consider the question when a sale is complete, but the ones most analogous to the case under consideration are those involving the venue of sales of intoxicating liquor. The case of *Harper* v. *State,* 91 Ark. 422, is much in point. There Harper was indicted in the Fort Smith District of Sebastian County for selling liquor to a minor. The sale was made under these circumstances. One Russell, a resident of Warner, Oklahoma, wrote Harper a letter inclosing three dollars for a gallon of whiskey. Harper was convicted of selling liquor to a minor, and on his appeal contended that he did not know that Russell was a minor, and that the sale did not take place in Fort Smith, but in Warner, Oklahoma, where the whiskey was delivered. Answering the contentions of the appellant the court said: "The sale occurred at the place where the contract and delivery were actually made. The contract of sale, like all other contracts, consists of an agreement

between the parties and in addition thereto a delivery of the chattel. In this case the minor sent a letter to the defendants making an offer to buy the liquor, and this letter was received by the defendants at Fort Smith, and at that place the offer was accepted by them. When they accepted the offer, the contract was entered into, and the place of the agreement was therefore at Fort Smith. The defendants thereupon at Fort Smith appropriated and segregated from their stock the gallon of whiskey, and delivered same to a common carrier at Fort Smith, duly addressed to the minor, and went further and obtained a bill of lading for the whiskey from the carrier for the minor, in which the minor was named as the consignee. Now, it is uniformly held that the delivery of goods to a common carrier, when made in pursuance of an order to ship, is in effect a delivery to the consignee; and more especially is this true when the title to the shipment, as evidenced by the bill of lading, is made in the name of the consignee. *State* v. *Carl & Tobey,* 43 Ark. 353; *Burton* v. *Baird,* 44 Ark. 556; *Berger* v. *State,* 50 Ark. 20; *Gottlieb* v. *Rinaldo,* 78 Ark. 123; *Templeton* v. *Equitable Mfg. Co.,* 79 Ark. 456; 1 Mechem on Sales, secs. 736, 739; Tiedeman on Sales, sec. 95.'' See also *Josey* v. *State,* 88 Ark. 269; *Glass* v. *State,* 68 Ark. 266; *Hunter* v. *State,* 55 Ark. 357; *Herron* v. *State,* 51 Ark. 133.

We have cases holding that the title does not pass where goods have been delivered to a common carrier pursuant to an order to ship, but under an agreement between the parties that the title thereto shall not pass until certain conditions have been performed. For instance, in the case of *Gibson* v. *Inman Packet Co.,* 111 Ark. 521, the court, after announcing the general principle that delivery of goods to a common carrier, when made in pursuance of an order to ship, is, in effect, a delivery to the consignee, stated that it was not one of unvarying application, as the rule had its origin in the theory that the parties, by such delivery, intended to pass the title to the property, but where a contrary intention was shown the rule does not apply.

It is not contended that anything occurred between appellant and Copeland to defeat the application of the rule except the letter set out above; but it is contended that the letter itself shows that the sale was conditional, and that it was a condition precedent that the trees should be free from crown gall, and the sale did not, therefore, become complete until after the arrival of the shipment at Lincoln and an opportunity had been afforded to inspect the trees.

We do not so interpret the letter. It does reserve the right to return an infected shipment. But this was a right which existed without being reserved, and was one which the consignee exercised in regard to the first shipment without having reserved it in his order. The consignee could not be required to keep infected stock, but there is nothing in the letter which purports to change the place of delivery. That occurred in Benton County, where the order was accepted and filled and the goods delivered to the carrier properly consigned; and the circumstance that a right of rescission was reserved did not alter the fact that the delivery was made in Benton County. This right of rescission was not exercised and the second shipment was not inspected but was accepted by the consignee. The law of this subject is stated in sec. 304 of the article on Sales in 24 R. C. L. as follows: "The question as to when the title passes in case of a delivery to a carrier for transportation to the buyer primarily depends on whether such delivery is a full compliance with the duty of the seller with respect to delivery, and the intention of the parties as to whether the title shall pass at the time of such delivery or not. It is the general rule, where the place of delivery is the point of shipment, that a delivery of the goods to a carrier, consigned to the buyer, whether the carrier is one designated by the buyer or left by him to selection by the seller, will pass the title to the buyer, if there is nothing else to show a contrary intention. * * * * Likewise the fact that the buyer has the right to inspect the goods on arrival at a certain point and reject them for non-

conformity to the contract of sale will not itself prevent the passing of the title on delivery to the carrier; it is otherwise, however, where the goods are shipped without any contract binding the consignee to accept the goods, but merely giving him the option to do so or not as he may elect."

The letter set out did not ask a mere option to buy or a privilege to do so after inspection; it was an order for goods to be filled by delivery for shipment to a common carrier by prepaid express. The purchase price was paid in advance and preceded the shipment, and the contract became a closed and completed transaction so far as the appellant was concerned when he delivered the trees ordered by Copeland to the carrier, subject only to the right of rescission by Copeland, which was never exercised.

We conclude, therefore, that the sale was made in Benton County, and the judgment of conviction must therefore be reversed. It is so ordered.