KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* MORRISON.

Opinion delivered April 1, 1912.

1. APPEAL AND ERROR—HARMLESS ERROR.—The error of admitting hearsay evidence to establish a fact proved by undisputed evidence is immaterial. (Page 525.)

2. CARRIERS—DUTY TO GIVE NOTICE OF ARRIVAL OF FREIGHT.—Carriers are required to give notice to a consignee of the arrival of freight. (Page 526.)

3. APPEAL AND ERROR—WHEN ERROR CURED.—Error in admitting evidence as to a statement of a carrier's agent as to the length of time it would take to ship an article was cured by an instruction that a carrier receiving freight for shipment must use ordinary care to carry same promptly to destination. (Page 526.)

4. CARRIERS—DELAY IN SHIPMENT—SPECIAL DAMAGES.—One who, at the time of shipping a broken piece of machinery, notifies the carrier's agent of the necessity of promptness because the shipper's gin stand would lie idle until the machinery could be repaired and returned is entitled to recover as damages the prospective profits of the gin where the carrier delayed unreasonably in transporting the machinery. (Page 527.)

5. SAME—NEGLIGENCE IN SHIPMENT—BURDEN OF PROOF.—A shipper suing a carrier for the nondelivery or delay in the delivery of freight has the burden of proving such nondelivery or delay. (Page 528.)

6. EVIDENCE—HEARSAY.—In an action by a shipper against a carrier for delay in delivery of freight to a consignee, a corporation, testimony of the consignee's president that the records of the consignee showed the date when the freight was received was inadmissible, in the absence of any personal knowledge on his part or of proof that the records were correctly kept. (Page 528.)

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee brought this suit against appellants as common carriers alleging a neglect of duty in failing to deliver a shaft rod for his gin within a reasonable time after receiving it for transportation.

Appellee lived at Antimony, Howard County, Arkansas, and owned a gin about two miles south of his home. The main shaft of the gin was broken in September, 1910. Appellee made a contract with the Thomas-Fordyce Manufacturing Company of Little Rock, Arkansas, to make a new shaft, and the broken shaft was shipped to them to be used as a model in making the new one. The broken shaft was delivered to the Kansas City Southern Railway Company at Gillham, Ark., on the 27th day of September, 1910, for shipment to the Thomas-Fordyce Manufacturing Company at Little Rock, Ark. Appellee testified:

"The agent told me it would take about two days to send the shaft by freight to Little Rock from Gillham, Arkansas, where I delivered the shaft to the company for shipment. I made the shipment, and paid the agent the freight he demanded. There was no chance for me to get a piece of machinery like that anywhere else that I knew of. I tried to get the shaft replaced at De Queen, but they could not do work like that. I told the agent it was the main shaft of my gin stand, and that the plant would be idle until I got a new one. I was not able to run the gin plant during the time that this shaft was in transportation. I do not know of any other place nearer than Little Rock where the shaft could have been replaced. The rental value of my gin was about $8 per day. The gin had been run the previous year, and I knew a shaft was broken when I purchased the gin plant that fall. There was no other defect in the machinery. I got the shaft back anywhere from the 10th to the 20th of November. The ginning season was about over then."

The deposition of John R. Fordyce was taken, and he testified substantially as follows:

"I live in Little Rock, Arkansas, and am president of the

Thomas-Fordyce Manufacturing Company. We give prompt attention to all orders for repairing and manufacturing machinery that are sent to us. On September 26, 1910, we received a communication from G. W. Morrison relative to the shipment of a gin shaft rod to our company for the purpose of manufacturing a new one."

We, quote from his testimony as follows:

"Interrogatory 7. Please state the date on which you received the gin shaft rod in Little Rock? A. The company's records show November 3, 1910."

He further stated that it required about six or eight hours to manufacture a new rod after the broken rod was received.

The agent for the Kansas City Southern Railway Company at Gillham, Arkansas testified:

"I was the agent when Morrison came to ship his gin shaft rod. He delivered us the rod, and it was promptly forwarded to Little Rock *via* Howe on the Rock Island railroad. It was shipped *via* Howe on the Rock Island because that was the quickest route to Little Rock. I told Morrison it would take five or six days."

Marvin Beavers testified: "I was assisting Mr. Cawood, the agent, at the time the gin shaft rod was shipped by Morrison to Little Rock. I made out the bill of lading and signed it for Cawood. Cawood was present at the time."

The jury returned a verdict for appellee in the sum of $135, and the case is here on appeal.

*Read & McDonough*, for appellants.

1. The evidence brought by interrogatories 6 and 7, propounded to the witness Fordyce, is pure hearsay and inadmissible. 77 Ark. 338; 10 Ark. 638; 16 Ark. 628; 29 Ark. 512. The burden of proof was on the plaintiff to show that the goods did not arrive at the station of the delivering carrier within a reasonable time after leaving Gillham. 4 Elliott on Railroads, § 1726.

There is no allegation in the complaint, nor any proof, that the delivering carrier failed to give notice of the arrival of the rod at the station in Little Rock, and the presumption is that it gave such notice. Since the law presumes that a carrier performs its duty, it is incumbent on a shipper, where

he alleges damages due for delay in shipment, to prove such delay. 45 Ark. 295. See also 92 Ark. 573.

2. The court's instruction on the measure of damages is erroneous, in that it permits a recovery for speculative or future profits. There can be no recovery under the facts alleged in this case. 36 Ark. 518; 13 Cyc. 58; 4 Elliott on Railroads, § 1733; 91 Ark. 180; 69 Ark. 219.

3. The testimony to the effect that appellant agreed to ship the goods in three or four days tended to vary the written contract, and was therefore inadmissible and prejudicial. 4 Ark. 179; 9 Ark. 501; 5 Ark. 672.

*James S. Steel, J. S. Lake* and *James D. Head,* for appellee.

1. Interrogatories 6 and 7 to J. R. Fordyce, and his answers thereto, were properly admitted; but it is immaterial whether there was error in admitting them or not, since there is no specific denial in the answer to the allegations of the complaint as to the negligent delay in the shipment until November 3. Kirby's Dig., § 6098; 73 Ark. 344.

2. The instruction as to the measure of damages correctly states the law. 72 Ark. 275. However, since it affirmatively appears that not all of the evidence is incorporated in the bill of exceptions, any alleged errors in giving or refusing instructions should not be considered. 88 Ark. 770; 95 Ark. 209; 92 Ark. 573.

3. There was no error in allowing plaintiff to state what time it would take to ship the shaft to Little Rock, since it was admissible for the purpose of showing what was the usual and customary time for making such a shipment from Gillham to Little Rock; but, if it was improperly admitted, that error was cured by the court's instruction that only ordinary care was required to promptly transport the shipment. 63 Ark. 443.

4. Under the facts of this case, notice of the claim was not necessary. 63 Ark. 331-337; 68 Ark. 218; 1 Hutchinson on Carriers, § 445. But, if notice was essential, and a condition precedent to the right to maintain an action, that condition was met by the filing of suit within four months from the date of shipment.

HART, J., (after stating the facts). Counsel for appellants first object that the court erred in allowing Fordyce to

state, in answer to interrogatory 6, that he had received a communication from Morrison relative to the shipment of the gin shaft rod to his company for the purpose of repairing it or manufacturing a new one.   Even if it be conceded that his testimony in this respect was hearsay, it is immaterial, for the undisputed evidence shows that the gin shaft rod was shipped to his company for the purpose of being used as a model in making a new one.

It is next contended by counsel for appellants that his answer to interrogatory 7, in which he stated that the company's records show that the gin shaft rod was received by his company November 3, 1910, was incompetent as being hearsay. We can not agree with him in this contention.   Mr. Fordyce had testified that he was president of the company, and that the company received mail orders for repair work and gave prompt attention to it.   Obviously, it would be impossible for him to carry all these orders in his head, and he might refer to his records for the purpose of refreshing his memory in regard to the date that he received the shaft rod.

Finally, it is insisted by counsel for appellants that this testimony was not sufficient to warrant the jury in finding that there was a delay in the shipment of the shaft.   They say that his testimony merely goes to the extent of showing that he received the rod on that day, but does not show that he received it as soon as it arrived at Little Rock.   It was the duty of the carrier to give the consignee, the Thomas-Fordyce Manufacturing Company, notice of the arrival of the shipment at Little Rock.   *St. Louis, I. M. & S. Ry. Co.* v. *Townes*, 93 Ark. 430.   See, also, *Railway Company* v. *Nevill*, 60 Ark. 375. Therefore we think it fairly inferable from the testimony of Fordyce that his company received the shaft from the railway company as soon as the latter notified it of the arrival of the shaft at its destination.

Counsel for appellants also insist that the court erred in allowing appellee to state what the agent told him as to the length of time it would take to ship the shaft to Little Rock. On this question the court gave the jury the following instruction:

"1.   If you find from a preponderance of the evidence that the plaintiff delivered to defendant at Gillham, Arkansas,

his gin shaft on September 27, 1910, to be shipped to Thomas-Fordyce Manufacturing Company, at Little Rock, Arkansas, and paid the freight demanded of him, it then and there became and was the duty of the defendant company to use ordinary care to promptly carry the same from said Gillham to said Little Rock."

In the case of the *St. Louis, I. M. & S. Ry. Co.* v. *Deshong*, 63 Ark. 443, the court held: "Error in admitting oral evidence of the time at which a railway agent agreed that horses shipped over its road would be delivered at their destination under a written contract is cured by an instruction that the only obligation of the company as to the time of forwarding the horses was to do so within a reasonable time."

The action of the court in giving this instruction cured the error of admitting the oral testimony to vary the terms of the written contract, and by it the court submitted to the jury the question as to what, under the facts and circumstances of this case, would constitute an unreasonable delay which would make appellants liable in damages.

There was no error in the instruction as to the measure of damages. According to the testimony of appellee, he had purchased a gin plant which had been run in that neighborhood the previous year, and which was the only gin plant in that immediate neighborhood. It had an established custom, and the testimony showed that it could not be run without the shaft rod. Appellee says that he told the agent that his gin would have to remain idle until the shaft rod was repaired. The instruction on the measure of damages was substantially in accordance with the principles of law announced by the previous decisions of this court in the following cases: *Chicago, R. I. & P Ry. Co.* v. *Planters' Gin Co.*, 88 Ark. 77; *St. Louis, I. M. & S. Ry. Co.* v. *Lamb*, 95 Ark. 209; *Hooks Smelting Company* v. *Planters' Compress Co.*, 72 Ark. 275.

The bill of lading provided that notice of claim for damages should be given to the railway company within four months after the delivery of the shaft rod to it for shipment. The shaft was shipped on September 27, 1910, and the complaint in this case was filed on January 4, 1911. Therefore, the suit was filed within four months of the date of shipment, and the suit itself was notice to the carrier of the claim of

appellee for damages on account of unreasonable delay in transporting the gin rod.

It follows the judgment will be affirmed.

### ON REHEARING.

### Opinion delivered April 22, 1912.

Hart, J.    Counsel for appellants insist that the effect of our original opinion is to hold that proof of the date when the records of the Thomas-Fordyce Manufacturing Company show that the shaft was received by it is sufficient to show delay in carriage on the part of the railway company, and that the opinion in this respect is wrong.    Consideration of counsel's brief and a reconsideration of the case leads us to the conclusion that he is right.    The burden of proof is on the appellee to show nondelivery or delay in delivery by the carrier to the consignee.    6 Cyc. 449 and 519.

The shaft rod was consigned to the Thomas-Fordyce Manufacturing Company at Little Rock, Ark.    The only testimony tending to show delay in delivering the shaft rod to the consignee was that of John R. Fordyce, president of the company. He was asked:    "Please state the date on which you received the gin shaft rod at Little Rock?"    and answered:    "Company records show November 3, 1910."    He does not state that he had any personal knowledge of when the shaft rod was received by his company, or that he had any knowledge at all when it was received except that which was shown by the company records.    He does not state that he kept such records, or had any supervision of keeping them.    The records were not even shown to have been correctly kept.    Hence his testimony as to what they showed was hearsay and incompetent.    If he personally supervised the receipt of goods shipped to his factory and himself made a record of the date of their receipt, it might be said that he had personal knowledge of the matter about which he was testifying, and he might look to his records to refresh his memory about the date when he received the shaft rod.

In this view, the motion for a rehearing should be granted, and it follows that the judgment should be reversed, and the cause remanded for a new trial.