GIBSON v. INMAN PACKET COMPANY.

Opinion delivered February 23, 1914.

1. CARRIERS—TITLE TO GOODS SHIPPED—RIGHT OF CONSIGNOR TO SUE.—Where the consignor shipped cotton on defendant's boat, receiving a bill of lading therefor, which he attached to a draft on the consignee, and which the consignee paid, but refused to accept the cotton because it had been damaged by the carrier, the consignor has a right of action against the carrier, when it appears that it was not the intention of the parties to pass title to the cotton by delivery to the carrier. (Page 524.)

2. SALE OF CHATTELS—EVIDENCE—PROOF OF CONTRACT BY PAROL.—Where A. purchased cotton for B., a contract that A. have the right to reject the cotton, if it was not received in a merchantable condition, may be established by oral testimony, as a bill of lading attached to a draft on A. for the purchase price, was merely evidence of an undertaking collateral to the contract of sale. (Page 525.)

3. DAMAGES—DAMAGE TO FREIGHT—RIGHT TO RECOVER.—Where a shipment of cotton was damaged while in transit by negligence of the carrier, and could not be sold at its destination, but was reshipped and sold elsewhere, proof that it sold for less than the market price in the place where it was shipped originally, is sufficient to show that plaintiff sustained a loss, for which he will be entitled to recover. (Page 526.)

4. DAMAGES—INJURY TO FREIGHT—ELEMENTS OF DAMAGE.—Where it is necessary to reship cotton damaged by the carrier, in order to get a market therefor, the expenses of handling and reshipping the same are proper elements in measuring the difference between what plaintiff could have gotten for the cotton if delivered in good condition, and what he could get for it in its injured condition. (Page 527.)

5. PLEADING AND PRACTICE—APPEAL HOW PERFECTED—PRACTICE IN THIRD CIRCUIT.—Under Act 325, Special Acts 1911, p. 927, providing that in the Third Judicial Circuit appellant may file a skeleton bill of exceptions with the clerk without containing a stenographer's transcript of the testimony, which may be filed, when approved by the court, without the specification of any time limit; *held*, the statute is sufficiently complied with where the stenographer's transcript was approved and filed within a year. (Page 527.)

Appeal from Lawrence Circuit Court, Eastern District; *R. E. Jeffery,* Judge; reversed.

*W. P. Smith,* for appellant.

This case comes within the exception to the general rule that delivery to the carrier is delivery to the consignee, viz:

Where there is something remaining to be done in order to complete the sale, the title to the property remains in the vendor, and where the vendor undertakes to make delivery at a distant point, he assumes the risk of the carriage, and the title to the property will not pass until delivery is actually made. 32 Md. 344; 3 Am. Rep. 177-180; 103 Ala. 671; 49 Am. St. Rep. 60; 56 N. J. L. 617; 26 Am. St. Rep. 441; 6 Clark & F., 600, 619-621; 24 Pac. (Ore.) 989; 79 Ark. 353.

*A. S. Irby* and *Ira J. Mack,* for appellee.

1. Where a motion for new trial was overruled and an appeal granted on the 19th day of October, 1912, and 120 days allowed in which to file a bill of exceptions, and on the 4th day of September, 1913, "the court, after carefully examining the above transcript or skeleton bill of exceptions with the evidence completed by the stenographer and inserted by the clerk, doth approve the same," etc., the purported bill of exceptions comes too late, and is not properly a part of the record. The judgment should be affirmed. 42 Ark. 488; 91 Ark. 566; 99 Ark. 97; 93 Ark. 316; 101 Ark. 439; 102 Ark. 439; 95 Ark. 331; 100 Ark. 246.

2. It is the settled law of this State that delivery of goods to a common carrier in the usual course of business is in effect a delivery to the consignee. 91 Ark. 422; 90 Ark. 161; 78 Ark. 123; 105 Ark. 53; 79 Ark. 456.

3. The difference between the price agreed to be paid by Wooten-Hornor Cotton Company and the net sum received by appellant after the cotton was sold by the commission merchants at Memphis, is not the correct measure of the damages. The true measure of dam-

ages is the difference in the price at Newport on the day it was received there and what the market value of it would have been if it was not wet.  6 Cyc. 531.

Before appellant could recover from the carrier damages based upon the contract price, he must have given notice to the carrier at the time of making the shipment, or at some time after the shipment was received, so that the carrier could act in accordance with the special arrangement.  A carrier will not be bound to do a special thing with reference to a shipment unless previously apprised of the special undertaking.  54 Ark. 24; 46 Ark. 485; 104 Ark. 215.

McCULLOCH, C. J.  This is an action instituted by plaintiff, John K. Gibson, against F. L. Inman, who is operating a steamboat under the name of Inman Packet Company, to recover on account of injuries to a consignment of sixty-five bales of cotton delivered to defendant for transportation from Lauratown, Arkansas, to Newport, Arkansas.

It is alleged in the complaint that servants of the defendant, in loading the cotton from the bank on to the boat, rolled it into the river and that it became water-soaked to the extent that it was seriously depreciated in value and was rejected by the consignee at Newport with whom plaintiff had contracted for its sale.

The Chicago, Rock Island & Pacific Railway Company was made a party defendant on account of the fact that it was a connecting carrier; but the court sustained a motion to quash service of summons as to that defendant and dismissed the complaint.  That feature of the case has passed out.

Defendant Inman filed an answer denying all the allegations of the complaint with reference to the charge of negligence and the injury to the cotton, and also as to the amount of damages.

The case was tried before a jury, but the court, at the conclusion of the introduction of testimony, gave a peremptory instruction in favor of the defendant.  This

was done upon the theory that the plaintiff had parted with the title to the cotton by delivering it to the common carrier and consigning it to the purchaser at Newport and that he, therefore, had no right of action to recover damages.

Plaintiff testified that, before he shipped the cotton, he entered into a contract with the Wooten-Hornor Cotton Company, of Newport, for the sale of the cotton at a stipulated price; that he shipped it on defendant's boat, consigned to Wooten-Hornor Cotton Company, and received a bill of lading, which he attached to a draft on the consignee for the stipulated price of the cotton. The draft, with bill of lading attached, reached Newport before the arrival of the cotton, and the consignee paid the draft, but, when the cotton arrived, refused to accept it on account of its damaged condition and depreciated value. The consignee immediately notified plaintiff, who went to Newport, and upon investigation found that the rejection by consignee was well founded, and he returned to the latter the amount of the draft which had been paid, and took up the bill of lading.

Defendant relies upon the principle announced by this court that "the delivery of goods to a common carrier, when made in pursuance of an order to ship, is in effect a delivery to the consignee," and that the consignor has no right of action for the loss of the goods or injury thereto. *Roberts Cotton Oil Co.* v. *Grady,* 105 Ark. 53, and other cases cited therein.

While that principle is well settled in this State and elsewhere, it is not one of unvarying application, for the rule had its origin in the theory that the parties, by such delivery, intended to pass title to the property, but where the contrary intention is shown, the rule does not apply. This distinction is clearly recognized in the case cited above as well as in other decisions of this court. *Garner* v. *St. Louis, I. M. & S. Ry. Co.,* 79 Ark. 353. Plaintiff testified that his contract with the Wooten-Hornor Cotton Company for the sale of the cotton embraced a condition that the cotton was "to be delivered at Newport

in merchantable shape'' and that the purchaser should have the right to reject the cotton if it was not in such condition upon arrival at the place of delivery. The contract was established by oral testimony, but this violated no rule of evidence, for the written bill of lading did not constitute the evidence of the contract between plaintiff and the consignee. That contract could be established by any other competent testimony, written or oral, and when established it shows that the title to the property remained in the plaintiff until delivery in merchantable condition at the point of destination. The evidence shows that the cotton was not in merchantable condition on account of the damage negligently caused by defendant and that the consignee had the right to reject it on that account.

The application of the law on this subject is fully stated in the following decisions cited on the plaintiff's brief:  *Magruder* v. *Gage,* 32 Md. 344; *Capehart* v. *Furman,* 103 Ala. 671; *McNeil* v. *Brau,* 56 N. J. Law, 617; *Rosenthal* v. *Kahn,* 19 Ore. 571, 24 Pac. 989.

The New Jersey court, in the case cited above, stated the rule as follows:

''It is sometimes stated as a general rule that delivery to the carrier is delivery to the consignee, and that the goods are to be carried to their destination at his risk, but an examination of the decisions to that effect will show that this doctrine prevails only where the contract of sale as between the consignor and the consignee was concluded at the place of shipment, and the undertaking to ship was collateral to the contract of sale; it will also be found that the rule uniformly adopted in the line of decisions is that the risk of loss and transportation depends upon the nature of the transaction, the terms of the contract and the intention of the parties.'' *McNeil,* v. *Brau, supra.*

The Maryland court stated the rule as follows:

''The question as to what acts are necessary to be performed by a vendor under an executory agreement for the sale of unspecified goods in order to transfer the

title to the vendee and subject him to the risk of the carriage depends entirely upon the agreement, either expressed or implied between the parties. If the vendor undertakes to make the delivery himself at a distant place, thus assuming the risk in the carriage, the carrier becomes the agent of the vendor and the property will not pass until the delivery is actually made." *Magruder* v. *Gage, supra.*

The court erred, therefore, in taking the case from the jury.

But it is urged that, according to the undisputed testimony, the plaintiff failed to prove any damages and that the peremptory instruction was harmless.

We can not accede to this view of the case, for we think there was substantial evidence tending to show that there was damage for which the plaintiff was entitled to recover. Plaintiff testified that under his contract with the Wooten-Hornor Cotton Company he was to receive the sum of $3,439.08 for the cotton delivered in merchantable condition at Newport. The testimony tends further to show that the cotton was very badly damaged on account of being water-soaked and that there was no market for it at Newport and no provision there for handling cotton in that condition. It had to be picked and re-baled and it was necessary to ship it to Memphis or some other place where it would be properly handled. Plaintiff reshipped it to Memphis, where the injured portions of the bales were picked out and the cotton then sold, bringing the price of $3,077.69 gross. There were certain necessary extra charges, on account of reshipping, handling, and reselling the cotton, for which plaintiff claims compensation. The proof shows that cotton declined in price to the extent that when it reached Newport, if it had then been in good condition, the aggregate market price would only have reached $3,111.91.

There is no proof in the record tending to show that plaintiff gave notice to the carrier of his contract with the purchaser for a fixed price; therefore he is not enti-

tled to recover special damages, and the **measure of his** recovery must be limited to the difference in the market value on account of depreciation caused by the injury. *St. Louis S. W. Ry. Co.* v. *Phoenix Cotton Oil Co.*, 88 Ark. 594; *St. Louis, I. M. & S. Ry. Co.* v. *Cumbie*, 101 Ark. 172.

If he had given notice of the contract with the purchaser, he would have been entitled to recover the difference between the price stipulated in said contract and the market value in Newport in its injured condition. *Crutcher* v. *C., O. & G. Rd. Co.*, 74 Ark. 358; *Chicago, R. I. & P. Ry. Co.* v. *Planters' G. & O. Co.*, 88 Ark. 377; *Chicago, R. I. & P. Ry. Co.* v. *Miles*, 92 Ark. 573; *Chicago, R. I. & P. Ry. Co.* v. *King*, 104 Ark. 215.

The evidence establishes the fact that there was no market for cotton in such depreciated condition in Newport and that, therefore, it was necessary to reship it to some point where it could be handled and where there was a market for it. There being no market at Newport for that class of cotton, it was competent to show the market value at the nearest convenient place. *St. Louis S. W. Ry. Co.* v. *Kilberry*, 83 Ark. 87.

The proof shows that the cotton was properly handled at Memphis and sold at its market price, and, according to those figures plaintiff sustained a loss, even if we take the market price of cotton on the day of its arrival in Newport if it had been uninjured. The case must, therefore, be reversed and the cause remanded for a new trial.

We refrain from passing on the correctness of all the items of charges for additional expenses brought forward by plaintiff, contenting ourselves with the mere statement of the general rule that additional charges, in getting the cotton to a place where there was a market for it, and the additional expenses of handling it, were proper elements for consideration in measuring the difference between what plaintiff could have gotten for his cotton if it had been delivered at Newport in good condition and what he could get for it in its injured condition.

We have not overlooked the contention of counsel for defendant that the evidence has not been preserved by bill of exceptions so as to give us an opportunity to review the case.

The record has been perfected by additional transcript, brought up on *certiorari,* and we think it shows that the testimony was properly brought into the bill of exceptions. There is a special statute in force in the Third Judicial Circuit which makes the procedure different from that prevailing anywhere else in the State. Act No. 325, Acts 1911 (Special), page 927. It provides that the appellant in a case "may file a skeleton bill of exceptions with the clerk without incorporating therein the stenographer's transcript, when said transcript has not been prepared and approved by the court or judge thereof, within the time allowed by law for filing the bill of exceptions, and the clerk shall insert said stenographer's transcript as, and after, same has been approved by the court or judge thereof, in the record of the Supreme Court, when the same is filed by the stenographer."

The record in this case shows that appellant was allowed 120 days within which to file his bill of exceptions. Within that time he filed a skeleton bill of exceptions, duly signed by the judge, in which bill there was a call made for the stenographer's transcript of the evidence. After the expiration of that time the additional record shows that the stenographer's transcript of the testimony, duly approved by the trial judge, was filed.

It will be noted that the special statute in force in that circuit does not fix any limit of time within which the stenographer's transcript must be filed, the only condition being that it must be approved by the judge. It was approved and filed within a year from the date of the judgment, therefore was sufficient compliance with the statute.

For the error of the court in giving the peremptory instruction the judgment is reversed and the cause remanded for a new trial.