KANSAS CITY SOUTHERN RAILWAY COMPANY v. MABRY.

Opinion delivered March 16, 1914.

1. CARRIERS—SHIPMENT OF FREIGHT—DELAY.—Where freight consisting of a carload of holly was shipped so as to reach its destination on the 15th of the month, and did not reach there until the 18th, the proof held to show an unreasonable delay, and the right of plaintiff to recover damages therefor. (Page 113.)

2. CARRIERS—SHIPMENT OF FREIGHT ON SUNDAY—DILIGENCE.—Where goods are shipped so that Sunday intervenes between the day of shipment and the date for arrival at its destination, if the carrier undertakes to transport the goods on Sunday, it will be held to proper diligence in so doing. (Page 114.)

3. DAMAGES—DELAY IN SHIPMENT OF FREIGHT—MEASURE OF DAMAGES.— Where a bill of lading provides that the measure of damages for

failure to deliver a shipment of freight promptly, shall be the market value of the goods at the place of shipment, and the evidence shows that there was no market value at the place of shipment, it is proper to consider the market value at the place of delivery, in an action for damages for failure to deliver a shipment of freight promptly. (Page 114.)

4. DAMAGES—FREIGHT—DELAY IN DELIVERY—SPECIAL DAMAGES—QUESTION FOR JURY.—Where a carrier was negligent in delivering a shipment of freight, and the evidence showed that on the day the goods should have been delivered, the market price was in excess of the contract price, it is proper to submit the issue of special damages, to the jury. (Page 115.)

5. CARRIERS—INJURY TO FREIGHT—RIGHT TO SUE.—One having a special interest in property with the right of possession, which has been delivered to a carrier for shipment, may maintain an action against the carrier for an injury thereto. (Page 116.)

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

*Read & McDonough,* for appellant.

1. Appellee had sold and delivered the holly to the Kansas City Fruit & Produce Company, and the title passed to that company. 43 Ark. 353; 62 Ark. 592; 106 Ark. 477. See also 35 Cyc. 317, note 47, and cases cited; 4 Elliott on Railroads, §§ 1414, 1426, and cases cited.

2. According to the undisputed evidence, there can be no recovery.

3. The evidence wholly fails to show unreasonable delay. The burden is upon the shipper to prove the delay, that it was unusual and that the carrier was negligent. 146 S. W. (Ark.) 853; 124 S. W. (Ark.) 1036; 153 S. W. (Mo.) 63. Under the undisputed proof the holly could not leave Horatio until about 10 o'clock in the morning of December 13. It was impossible for it to reach Kansas City on Saturday, the 14th. The company was not required to transport it on Sunday, the 15th. 113 S. W. (Tex.) 306; 106 N. W. (Iowa) 642; 92 N. Y. S. 800; 50 S. W. 559.

Before a carrier can be held for any special damages, there must be notice given to the carrier of all facts, and all the special circumstances. 148 S. W. (Ark.)

1035; 54 Ark. 22; 60 So. (Miss.) 312; 128 S. W. (Ark.) 1030; 104 Ark. 215; 97 S. W. 757. There is no proof in the record of any notice whatever, and it therefore fails to show any unreasonable delay. Mere delay does not create a liability. 155 Ill. App. 40; 57 S. E. 458; 57 S. E. 1066; 106 Ill. App. 563. Proof of delay alone is not sufficient. 79 Mo. App. 524; 138 S. W. 884; 106 N. W. 642; 44 So. (Ala.) 94.

4. The burden of proof was on the appellee. 71 Ark. 57; 4 Elliott on Railroads, § § 1483, 1484; 3 Elliott on Evidence, § 1916; 103 Ark. 522; 18 W. Va. 361, 41 Am. Rep. 696-701. As to whether or not there was unreasonable delay, was a question of law. 108 Ark. 432.

5. In a case of this kind, where the property to be shipped was holly, it was not admissible to prove the time it required to ship peaches, a perishable fruit, or cattle which are required by United States law to be shipped in a certain way. 77 So. (Ga.) 802; 65 Ill. 399-402.

6. Where a bill of lading provides that the damage for which any carrier may be liable should be computed at the time and place of shipment, it is error for the court in an action for damages for delay to charge that the damages should be estimated according to the price of the article at the place of delivery. 43 So. (Ala.) 102.

If appellee was entitled to recover at all, he was only entitled to recover the difference between the market price of the holly when it should have arrived in Kansas City, and the market price when it did arrive. 101 Ark. 172; 84 Atl. 72; 131 S. W. 755.

*J. S. Steel, J. S. Lake* and *J. D. Head,* for appellee.

McCULLOCH, C. J. The plaintiff shipped a carload of holly, in boxes and crates, from Horatio, Arkansas, over defendant's railroad, to Kansas City, Missouri, consigned to his own order but intended for delivery to a dealer in that commodity with whom the plaintiff had a contract of sale at the price of $2 per box, the purchaser to pay the freight. The car was loaded at Horatio during the afternoon of December 12, 1912, and left that

point the next day. It was shipped as first-class freight, and, according to plaintiff's proof, could have reached Kansas City on December 15. It did not reach there until the morning of December 17, and there is a conflict as to when the purchaser, who, by stipulation in the bill of lading was to be notified, received notice of the arrival of the car. Defendant's agents testified that notice was given at 3 o'clock on the afternoon of the 17th and that the notice was renewed on the morning of the 18th. The agent of the purchaser testified that the notice was not received until the morning of the 18th. The purchaser refused to accept the holly on account of the delay in reaching Kansas City, and it was subsequently sold by defendant's agent for the freight charges, bringing an amount $3.67 in excess of those charges. The evidence tended to show that there was no market for holly on the 18th and that there was a total loss on account of the delay.

Plaintiff instituted this action to recover the full price of the holly according to his contract with the Kansas City dealer. He recovered a judgment below for the full amount of the contract price, and defendant has appealed to this court.

It is insisted that the verdict is not supported by the evidence. It is said, first, that there is not sufficient proof of the delay.

We are of the opinion, however, that the proof is sufficient, and that that question was properly submitted to the jury. The holly was shipped as first-class freight, the same as live stock, and witnesses who were accustomed to shipping live stock or who had shipped over that line, testified concerning the time required for a car of freight to go from De Queen, Arkansas, which is eight miles from Horatio, to Kansas City. The proof was sufficient to show that forty-eight hours was enough time to take in transporting the car to Kansas City and that any excess constituted unreasonable delay.

Sunday intervened between the date of shipment and the time the consignment should have arrived in Kansas

City, and the point is made that the company was not bound to transport the goods on that day.

There is no proof that the company refrained from forwarding freight on Sunday, and even though it had the right to stop its trains on Sunday, if it failed to do so, and undertook to forward the freight, it was held to proper diligence in doing so. *Western Union Telegraph Co.* v. *Hearn,* 110 Ark. 176, 161 S. W. 1025. But if Sunday be eliminated from the time chargeable against the defendant in transporting the freight, still there is enough to show an unreasonable delay, for even then, according to the proof, the car should have reached Kansas City on December 16, and the proof shows that if the car had arrived on that day the damage would have been averted. The price of holly was declining very rapidly day by day and the market went to pieces thereafter.

The burden of proof was on the plaintiff to show that there was an unreasonable delay. *Kansas City Southern Ry. Co.* v. *Morrison,* 103 Ark. 522. Plaintiff has discharged that burden and adduced sufficient evidence to warrant the jury in finding that there was an unreasonable delay.

It is next contended that the proof fails to show any damage, in that the holly could have been disposed of at a price sufficient to save plaintiff harmless.

There was a conflict in the testimony on this point, that adduced by the defendant tending to show that on December 17 or 18, the holly could have been sold at a price sufficient to save the plaintiff from damage. The freight charges amounted to sixty cents per box, and it was, therefore, necessary to find a market at $2.60 per box in order to prevent any damage. J. H. Dengel, a witness introduced by plaintiff, testified that on December 16 the price of holly began to decline but that there were some sales at $3.50 per box; that after that day the market was demoralized because it would be impossible to make shipments from that point in time to reach other points in the territory for Christmas sales. He testified further that after the 16th "it was a question to get what-

ever price you could for whatever was held over after that day. The market on the 17th was $2.50 per crate, and from that to $1, and some was dumped without any sale." Holly is perishable, and this testimony was sufficient to show that at the time it reached Kansas City there was no market for it and that it was a total loss. The testimony warranted the jury in finding that the dealer had no opportunity to place it on the market before December 18, when the proof is clear enough that there was practically no sale for it. Even accepting the statement of defendant's agents that notice was given at 3 o'clock on the afternoon of the 17th, the jury could have drawn the inference that it was too near the close of business hours for the dealer to receive and put it on the market before the next day.

The testimony was, therefore, sufficient to sustain the verdict that there was a total loss of the price of the holly.

Objections were made to some of plaintiff's testimony bearing on the question of delay. But we think the testimony was competent, and not of sufficient importance to call for discussion.

It is contended that the court erred in fixing the measure of damages according to the price of the article at the place of delivery instead of according to the price at the place of shipment, as stipulated in the bill of lading.

The evidence warranted the finding that there was no market at Horatio, or, rather, that the market there was dependent upon prices at Kansas City and other distant markets. It was proper to consider the prices at Kansas City in order to determine the market at Horatio (*St. Louis Southwestern Ry. Co.* v. *Kilberry,* 83 Ark. 87), and there is no contention from either side that the Kansas City market was not the proper criterion in fixing the market price at Horatio, transportation charges being deducted.

The instruction was not technically correct, but in view of the undisputed evidence no prejudice resulted.

The testimony does not show that notice to the company was given so as to warrant the recovery of special damages. But there was no error in submitting to the jury the question of special damages, which was the difference between the contract price and the market price in Kansas City on the date that the shipment reached Kansas City and notice was given to the dealer. The undisputed evidence is that the market price in Kansas City on the day that the shipment should have reached that place was considerably in excess of plaintiff's contract price with the dealer. Learned counsel for defendant insist even that the market was in excess of the contract price on the day that the car reached Kansas City. Therefore, the restriction to the contract price really resulted in a benefit to the defendant, and it can not complain.

The last contention to be disposed of is that the title to the commodity passed out of plaintiff upon delivery to the carrier and that plaintiff had no right to maintain an action for the damage.

It will be remembered that plaintiff shipped the holly to his own order, the bill of lading containing a stipulation that the dealer was to be notified. He drew a draft in favor of the Bank of Horatio on the dealer in Kansas City and attached the bill of lading thereto. The dealer refused to pay the draft or to accept the shipment on account of the delay.

It is insisted that the title to the commodity passed on delivery to the carrier, notwithstanding the consignment to shipper's order. Counsel rely on the recent case of *Trousdale* v. *Arkadelphia Milling Co.*, 106 Ark. 477, as sustaining their contention.

The doctrine is there stated rather broadly, but, as applicable to the facts of that case, it was entirely correct. The point there was as to whose duty it was to comply with the laws of Louisiana with respect to a shipment of foodstuffs consigned from Arkadelphia, in this State, to a point in that State. We held that it was the duty of the soliciting agent in Louisiana and, in deter-

mining that question, it was stated broadly that the title passed upon delivery to the carrier. It may be true that as between the parties a delivery of goods to a carrier, consigned to shipper's order, under a contract of purchase with another, constitutes a delivery to the purchaser and that the risk of loss passes to the purchaser; but it does not follow that the shipper under those circumstances can not maintain an action for damages on account of delay or total loss of the goods. In the recent case of *Gibson* v. *Inman Packet Co.*, 111 Ark. 521, 164 S. W. 280, we held that even where the goods were shipped direct to the purchaser, the shipper had a right of action for damage to the property, it being a question of intention of the parties as to when title would pass and the risk shifted. Mr. Hutchison says that, according to the weight of American authority, the consignor may sue in any event, whether he is the owner or not, because of his being a party to the contract of affreightment. 3 Hutchison on Carriers (3 ed.) § 1315. There is some conflict in the authorities on that question, and we need not take any position on that proposition, for it is very clear under the authorities that one having a special interest in the property, with the right of possession, can maintain an action against the carrier for injury thereto. 3 Hutchison on Carriers (3 ed.), § 1305. This court adhered to that rule in the case of *Kansas City So. Ry. Co.* v. *Mixon-McClintock Co.*, 107 Ark. 48.

There can be no question in this case as to the interest of plaintiff in the shipment, for he retained dominion over the property for the assertion of his rights and protection of his interest therein.

In *Arkansas Southern Railway Co.* v. *German National Bank*, 77 Ark. 482, Judge BATTLE, speaking for the court, said:

"At common law a bill of lading is a muniment of title to the goods or property therein specified; is a symbol or representative of the goods; 'when properly endorsed and delivered, with the intention of passing the title to them, is a symbolic or constructive delivery of

the goods themselves;' and, when assigned, the carrier, having notice of the assignment, becomes bound to deliver the goods to the assignee. If the goods, by the terms of the bill of lading, are deliverable to the order of the shipper, the carrier could not deliver except upon production of the bill of lading properly endorsed by the shipper; 'for this notice is to the carrier that the shipper intends to retain in his power the ultimate disposition of the goods.' "

The plaintiff having an interest in the goods and retaining dominion over the same for the protection of that interest it is clear that he had the right to maintain this action

Judgment affirmed.