McGehee v. Yunker & Ronk.

Opinion delivered February 10, 1919.

1. FRAUDS, STATUTE OF—SALE OR AGENCY.—Where the substance of a contract was that plaintiffs should obtain a carload of potatoes and deliver them to appellants at a certain stipulated price, the contract was one of sale and not of agency, and, being oral and for an amount exceeding $30, was within the statute of frauds.

2. SALES—DELIVERY TO CARRIER—INTENTION.—While generally delivery to carrier duly consigned to the purchaser constitutes a delivery to the purchaser, and when consigned to shipper's order such delivery does not constitute a delivery, the rule is not inflexible, and parol proof is admissible to show what the real intention of the parties was.

3. SALES — DELIVERY TO CARRIER.—In an action for damages for failure to receive a carload of potatoes, a delivery to the carrier was a delivery to the purchaser, though consigned to the purchaser, where such mode of shipment was merely for the convenience of the purchaser; the understanding of the parties being that this particular carload of potatoes was to be appropriated to the execution of the contract, and that title was to pass upon delivery to carrier.

4. EVIDENCE — HEARSAY—MARKET CONDITIONS. — In an action for damages for breach of a contract to purchase a carlod of potatoes, testimony by the seller that he endeavored to sell the potatoes to persons engaged in the business of buying and selling potatoes, and that he learned from them that the potato market had gone to pieces, was not inadmissible as hearsay, because it constituted a part of the seller's efforts to sell the potatoes.

5. DAMAGES—DUTY TO MINIMIZE.—Where a seller complains of the buyer's failure to perform a contract of purchase, he should minimize the losses by a reasonable effort to find a purchaser at the highest market price.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*Harry P. Daily,* for appellants.

1. It was error to admit hearsay testimony as to what potato buyers said. 1 Wigmore on Ev., § 719; 89 S. W. 978; 88 *Id.* 448; 12 *Id.* 816; 56 N. E. 288; 89 Ark. 595.

2. This was a sale of the potatoes and being within the statute of frauds is void and the court erred in its instructions to the jury. 76 Ark. 395.

*Sid White,* for appellees.

The statements of what potato buyers said were admissible. 199 S. W. 379; 182 *Id.* 1175; 77 *Id.* 6634; 3 Wallace (U. S.) 140; 1 Wigmore on Ev., 716; 79 Ark. 342; 66 S. W. 625; 88 S. W. 797.

This suit was to recover money advanced and for services rendered as agent and is not within the statute of frauds. 60 Ark. 97; 58 *Id.* 348; 76 *Id.* 399. It was a suit for a broker's commission and not a sale. 1 Ark. 391.

McCULLOCH, C. J. This is an action at law instituted by appellees against appellant to recover, as

damages for breach of contract, the difference between the contract price of a car load of potatoes and the price that the potatoes brought on the market when sold after the alleged breach of the contract.

Appellees were engaged in the mercantile business at Ratcliff, Logan County, Arkansas, and occasionally bought potatoes in the gathering season for resale in carload lots. Appellants were engaged in business in Fort Smith. According to the testimony adduced by appellees, one of the appellants on a certain day in June, 1917, called appellee Yunker over the telephone and entered into an agreement whereby the latter was to purchase from potato growers a car load of potatoes and deliver them to appellants in Fort Smith on that day, and that appellants should pay appellees a price of $2.65 per bushel. Yunker proceeded to purchase a car load of potatoes from different farmers in that locality and loaded them into a car and shipped them to Fort Smith as per agreement with appellants. In the conversation over the telephone Yunker asked for shipping directions, and Hawkins, the appellant with whom the transaction was conducted, instructed Yunker to have the bill of lading made out to himself (Yunker) and that they would change the shipping directions when the car of potatoes reached Fort Smith. When the consignment of potatoes reached Fort Smith, appellants, after some delay and various conversations between the parties, declined to accept the potatoes. The market declined very rapidly and appellees, as soon as convenient after the repudiation of the contract by appellants, sold the potatoes for the best price obtainable at a loss in the sum of $324.25, and appellees recovered judgment in the trial below for that sum.

Counsel for appellees prosecuted the suit below on the theory that the contract between the parties constituted one for the employment of appellees by appellants as the latters' agent to purchase the potatoes for them, and they undertake to sustain the judgment here on that theory.

Counsel for appellants contend that the testimony, viewed in its light most favorable to appellees, tends to show an oral contract for the sale and purchase of the car load of potatoes, and that the contract was within the statute of frauds, and, therefore, void and unenforceable.

We are of the opinion that appellants are correct in their characterization of the contract, and that it constituted one for the sale and purchase of the potatoes, and not for the employment of appellees as agents to purchase the potatoes for appellants. The substance of the contract was that appellees should obtain a car load of potatoes and deliver them to appellants at a certain stipulated price. This made a contract of sale. *Taylor* v. *Godbold,* 76 Ark. 395. The contract between the parties, not being in writing, was, when made, within the statute of frauds. Kirby's Digest, section 3656.

The debatable question presented is whether or not the circumstances, as established by the testimony of appellees, was sufficient to show a delivery and acceptance of the potatoes by the purchasers so as to take the transaction out of the operation of the statute. The testimony is sufficient to show that the parties agreed on a method of delivery of the potatoes by delivery to the carrier and that the bill of lading was to be made out in the name of appellees to be changed as soon as the consignment reached Fort Smith, and the circumstances warrant the inference that the parties intended that the sale should be complete and the title pass by delivery to the carrier. Yunker testified that he asked Hawkins in the telephone conversation how to make out the bill of lading and that Hawkins replied "make it out to yourself and we will change it when it gets here."

The rule is that in a sale of chattels to be shipped by common carrier the delivery of the commodity by the seller to the carrier, duly consigned to the purchaser, constitutes a delivery to the purchaser and consummates the sale. *State* v. *Carl & Tobey,* 43 Ark. 353; *Burton & Townsend* v. *Baird & Bright,* 44 Ark. 556; *Gottlieb* v.

*Rinaldo,* 78 Ark. 123; *Gibson* v. *Inman Packet Co.,* 111 Ark. 521.

The converse of that rule is that where the seller consigns the shipment to his own order, thus manifesting his intention to reserve his dominion and right of disposition over the property, nothing else appearing to manifest an intention to pass the title, such consignment does not constitute a delivery to the purchaser. *Berger* v. *State,* 50 Ark. 20.

These rules are, however, not inflexible in their operation, but other proof is admissible to show what the real intention of the parties was, for the question of delivery is largely one of intention as manifested by overt acts, and the rules of evidence are not violated by allowing oral proof to show what the real intention of the parties to the transaction was with respect to the question of delivery. *Gibson* v. *Inman Packet Co., supra.*

In the case of *King & Clopton* v. *Jarman,* 35 Ark. 190, this court stated the rule on the subject as follows:

"Where the minds of the parties have assented to the present purchase and sale of a specific chattel, which may be clearly identified, and separated from other property, and the sale be dependent on no conditions nor contingencies, and such possession be given as the nature of the subject, and the situation of the parties with regard thereto will permit of, and the vendor has done all that is required of him with respect to the property, the title will pass."

The facts of this case bring it within the rule just announced. While the consignment to the seller's own order constituted *prima facie* reservation of the title and dominion over the property which was the subject of the contract, the proof in the case shows that this method of shipment was merely for the convenience of the purchasers, and that the understanding of the parties was that this particular car load of potatoes was to be appropriated to the execution of the contract and that the title was to pass upon the delivery to the carrier.

While the instructions to the court were not accurate in conforming to this view of the law, the jury necessarily found under those instructions a state of facts which entitled appellees to recover.

It is next contended that the court erred in permitting appellee Yunker to testify concerning his conversation with other potato buyers in Fort Smith when he was making an effort to find a sale for the potatoes after the breach of the contract by appellants. Yunker was permitted to testify that he met several parties, who he stated were engaged in the business at the time of buying and selling potatoes, and that from statements by them he learned that the potato market had gone to pieces. There was other testimony unobjected to which showed what the market price of potatoes was after the breach of the contract. We do not think that the court committed error in allowing the testimony concerning the statements of potato buyers. It was the duty of appellees to minimize their losses by reasonable effort to find a purchaser at the highest market price, and this testimony merely tended to show that Yunker had approached the potato buyers in an effort to sell, and that they had stated to him that the market was in such a condition that they could not afford to purchase the potatoes. This was not hearsay testimony, but constituted a part of the efforts of appellees to sell the potatoes.

The evidence was sufficient to sustain the verdict of the jury, and the judgment is, therefore, affirmed.