Wood *v.* Jones.

Opinion delivered February 6, 1922.

1. TRIAL—DIRECTION OF VERDICT—CONFLICTING EVIDENCE.—Where the evidence in the issue in a case was conflicting, it was error to direct a verdict for either party.

2. SALES—FRAUDULENT REPRESENTATIONS.—One who has been induced to purchase property by fraudulent representations of the vendor has the right to recover in a court of law the damages which he has sustained thereby, but in order for representations to be fraudulent in law they must be material to the contract or transaction and must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; reversed.

*Minor Pipkin* and *Lake & Lake,* for appellant.

Appellant made a case for the jury, testing the evidence in accordance with the established rule of this court, and it was therefore error to direct the verdict for the defendant. 107 Ark. 158; 282 S. W. (Ark.) 23.

The trial court in directing the verdict instructed them upon the weight of the evidence in telling them that the appellee had good cause for repudiating the contract. § 23 art. 7, Const. The instruction was wrong in principle in saying that appellant must show that appellee abandoned the contract without good cause. The burden was on the appellee to show that he abandoned the contract for good cause. Fraud in the making of a contract is an affirmative defense and must be established by a preponderance of the evidence. 78 Ark. 87; 108 *Id.* 415; 33 *Id.* 425.

If the instruction was not erroneous in the respect indicated, it was nevertheless error to fail to submit to the jury the question whether or not the appellee breached the contract without good cause. Appellant's testimony was to the effect that the quantity of goods on hand was not made a part of the deal. If that is true, and for the purposes of this case it must be regarded as true, any false representation with reference thereto was immaterial, and afforded no excuse for abandoning the contract. 95 Ark. 131; 26 Id. 28; 31 Id. 170; 8 Id. 146. The alleged false representations as to quantity was a mere expression of opinion, as shown by the evidence, and cannot be set up by appellee as an excuse for repudiating the contract. 95 Ark. 378; 20 Cyc. 17; 9 Cyc. 416. and cases cited.

The strongest inference that can be drawn from the evidence is that the quantity of goods had nothing to do with the deal. There was therefore a question for the jury on the issue of fraud. 24 Ark 222; 30 Id. 380; 20 Id. 216. See *Cotner* v. *Bangs,* 137 Ark. 397, for rule as to representations that will be held as fraudulent in law; also, 123 Ark. 492; 73 Id. 542; 99 Id. 438; 101 Id. 95; 104 Id. 396.

Under the facts of this case the rule of *caveat emptor* applies.

*Norwood & Alley,* for appellees.

The trial court properly directed the verdict. Appellant's own admission show that he perpetrated a legal fraud upon appellees. Representations are fraudulent in law when made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury. 101 Ark. 95; 73 Id. 542. Appellant cannot shelter himself behind the claim that he was merely expressing an opinion as to what the stock would invoice. He was bound to know that Jones would rely upon that opinion or he would not have made the inquiry. 12 R. C. L. 15, 16; Id. 93.

The rule *caveat emptor* does not apply. Where the seller has peculiar knowledge of the matter, and makes the false representation in order to induce, and thereby does induce, the buyer to rely upon his false statement, he will not be heard to say that the buyer should have ascertained the truth. 99 Ark. 438.

It was the court's duty in this case to direct the verdict. 104 Ark. 267; 97 *Id.* 438; 69 *Id.* 562; 73 *Id.* 148; 55 *Id.* 12; 85 *Id.* 101; 86 *Id.* 140; 85 *Id.* 1; 102 *Id.* 435; 113 *Id.* 380; 121 *Id.* 23.

HUMPHREYS, J. This suit was treated by the parties as one, in effect, instituted by appellant against appellees in the Polk Circuit Court to recover $1000 as liquidated damages for the breach by appellees of a contract for the sale and purchase of a stock of merchandise owned by appellant and situated in Mena, Arkansas, at the price of 15 per cent. above the cost and carriage of said goods. · It was alleged that each party delivered a check for $1000, payable to the other, to the Farmers' & Merchants' Bank, to cover the damages accruing to either in case the other refused to carry out the deal; that pursuant to the agreement the front doors of the building in which the goods were located were closed for three days for the purpose of taking an invoice of the stock; that the back doors were left open to accommodate a portion of the retail trade; that appellees took charge of the cash register and kept the proceeds of the invoiced goods separate from the proceeds of those which had not been invoiced; that when the invoice was practically completed the appellees, without good and sufficient cause, refused to proceed with the performance of the contract; that appellant demanded the check of $1000 deposited in the bank to cover the damage accruing to him, the payment of which was refused at the instance and direction of the appellees, whereupon this suit was instituted.

Appellees filed an answer, admitting the contract, the invoice of the stock pursuant thereto, and their refusal to proceed with the performance thereof, but denied

that they refused further performance of the contract without excuse or justification, and interposed as a defense to the further performance thereof misrepresentations of appellant as to the amount of merchandise, charging and alleging that, as an inducement to the contract, appellant represented to them that the stock would invoice about $30,000; that in reliance upon this representation they entered into the contract for the purchase of the stock of merchandise and organized a corporation with a capital stock of $25,000, to handle the proposition; that they offered to comply with the contract by accepting approximately $30,000 worth of merchandise at the agreed price, which appellant refused to sell to them.    Appellees also, by way of cross-bill, alleged a breach of the contract on the part of appellant in refusing to sell them $30,000 worth of said merchandise, and prayed judgment over against them for the amount of $1000, deposited in the bank to cover their damages.

Appellant filed a reply to the answer and cross-bill, denying that he had misrepresented the amount of the merchandise, or that he had breached the contract by his refusal to sell them $30,000 worth of his merchandise.

The cause was submitted upon the pleadings and evidence.    At the conclusion of the evidence the court found that neither party was entitled to recover damages from the other, and peremptorily instructed the jury to return a verdict for the defendants (appellees) which was done, and a judgment rendered in conformity therewith, all over the objection and exception of appellant. From the verdict and judgment an appeal has been duly prosecuted to this court.

It is reflected by the record that appellee Jones, with the other appellees (except the bank) as his associates, purchased a stock of merchandise in Mena, Arkansas, from appellant at the price of 15 per cent. above the cost and carriage of said goods, the total price thereof to be determined by inventory of the stock; that appellant and

appellees T. R. Jones each deposited his check in the Farmers & Merchants Bank, at Mena, for $1000 to cover the damages to the other in the event that either refused to carry out the deal; that they subsequently closed the front doors of the building and proceeded with the inventory; that the back doors were left open for customers to enter and purchase goods. That appellees took charge of the cash register and kept the proceeds of the goods which had been inventoried separate from the proceeds of other sales, and placed the money each night during the progress of the inventory in the large safe used in connection with the business; that when the inventory was about completed, and it was ascertained that the entire stock, including a lot of hats and fixtures which had not been inventoried, would amount to approximately $50,000, the appellees, through their spokesman, T. R. Jones, announced that the stock had invoiced largely in excess of the invoice value of the stock of merchandise represented to them by appellant; that they had purchased the stock upon the representation of appellant that he had approximately $30,000 of goods on hand; that they offered to take $30,000 in merchandise, according to the inventory, which appellant refused on the ground that he had sold all, and not a part, of the stock to them.

The evidence is in sharp conflict upon the issue of whether the amount of merchandise on hand was misrepresented to appellees by appellant, and whether the appellees purchased the stock in reliance upon the alleged misrepresentation. The evidence of appellees upon this particular issue was to the effect that they purchased the stock in reliance upon the representation of appellant that it would invoice approximately $30,000, and in order to handle the proposition organized a corporation and issued stock for $25,000 and arranged to borrow $10,000 additional; that, in order to be certain as to the amount of merchandise on hand, Mr. Jones, in the presence of two of his associates, inquired of appel-

lant as to the basis for his statement that the stock of merchandise would inventory approximately $30,000, and was told by appellant that on the first of January he had taken an inventory which totaled about $34,000; that after the taking of the inventory he had sold more goods than he had purchased. On the other hand, the testimony of appellant was to the effect that in his opinion or according to his best judgment, the stock of merchandise would inventory between thirty and thirty-three thousand dollars; that the invoice totaling $34,000 taken on the first of January preceding the sale was not accurate, and was based upon estimates as to the quantity of many of the articles rather than measurement thereof; that he did not know whether his purchases after the taking of the inventory in January were greater or less than the sales; that at least two of the appellees were familiar with the stock, having been employees of appellant in the operation of said business; that they purchased the stock in reliance upon their own judgment and familiarity therewith and after an inspection thereof.

There was much evidence introduced pro and con upon the issue of whether the quantity of goods was a material fact entering into the deal. We deem it unnecessary to set it out in detail. It was in conflict, and, when viewed in the most favorable light to appellant, was sufficient to carry the issue to the jury for determination under proper instructions.

The general rule of law applicable to cases of this character was stated in *Joyce v. McCord*, 123 Ark. 492, as follows: "It is well settled that one who has been induced to purchase property by fraudulent representations of the vendor has the right to recover in a court of law the damages which he has sustained thereby, but, 'in order for representations to be fraudulent in law, they must be material to the contract or transaction and must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them

to his injury, and such must be their effect.' '' This rule
was reannounced in the recent case of *Cotner* v. *Bangs,*
137 Ark. 397.

For the error in peremptorily instructing a verdict
for appellees, the judgment is reversed, and the cause
remanded for a new trial.