SMITH v. EVANS.

1.  STATUTE OF FRAUDS—SALE OF GOODS.—A verbal agreement for the
    sale of two bales of cotton worth more than $50 at the price of ten
    cents per pound, did not constitute such delivery as is required by the
    statute of frauds, as something remained to be done between vendor
    and vendee to ascertain the quantity of cotton and the full amount to
    be paid.

Before IZLAR, J., Marlboro, October, 1891.

Action by Peter T. Smith, as administrator of Stephen Quick, against Wyatt Evans, for recovery of personal property, commenced before S. W. G. Shipp, Esq., trial justice, who reported as follows:

This is an action of claim and delivery brought by the plaintiff for the recovery of two bales of cotton of the alleged value of $75, from the defendant. The plaintiff alleges that this cotton is wrongfully withheld from him by the defendant, and that he is the owner of the same and entitled to the possession thereof. The defendant answers: 1. By general denial. 2. By plea of the statute of frauds.

It appears to my satisfaction from the evidence, and I find the facts as proven in the case are as follows: That the plaintiff, Peter T. Smith, is the duly qualified administrator of the estate of Stephen Quick, deceased, and was such administrator on January 27th, 1891. That the defendant was indebted to the estate of Stephen Quick on the date mentioned, to the extent of $146.92, on account for supplies, the account being $317.43, subject to a credit of $170.46, the defendant being a farmer, and trading at Quick's store. On the date mentioned above, the plaintiff, in company with Knox Livingston, Esq., his attorney, went to the defendant's house in this county, distant from Quick's store about five miles, for the purpose of collecting the amount due the estate, or as much of it as possible, by taking cotton or money on the account. On reaching defendant's house, they saw defendant near his barn, and engaged in negotiations with him. Three bales of cotton were lying some distance off—some 50 to 75 yards. Defendant was asked to whom the cotton belonged. He replied that he owned two of the bales and his wife owned one. Mr. Livingston then, after mentioning the fact of defendant's indebtedness to the Quick estate, took the ledger which was kept in Quick's store, and which the attorney had with him on this trip, and told defendant the amount of his account. Defendant was asked if he was not going to do something more for the Quick estate. He replied, Yes; but he wanted to get the highest market price for his cotton. The administrator offered him

9 cents per pound for his cotton. He declined to take it. Finally, upon being asked what he would take for the cotton, he replied that. he was willing to take ten cents per pound for it.

After some consultation between the administrator and his attorney, the administrator said he would give it. Defendant then mentioned the fact that he had not paid his rent to Mr. Odom. He said he thought he owed $20 or $21 for rent, which he wanted to pay out of this cotton. Upon his being urged to pay his rent out of some other produce he had, he replied, No; that if he sold the cotton without paying his rent, he might get into trouble. Defendant was then asked, "If Mr. Odom is provided for, will you let Mr. Smith have the cotton?" His reply was that he would. Mr. Smith then told defendant that he could give Mr. Odom an order on him (Smith) for the amount of the rent, or he could have him (Odom) at Quick's store on a day certain, and that he would pay the money to Odom. He was then asked if he had any means there of weighing the cotton, and if he had any one to help weigh it. He replied, No. The attorney for plaintiff then turned to defendant and said, "This is a trade, then, and this cotton is Mr. Smith's?" He replied it was, and all he wanted paid out of it was his rent. The counsel then got a memorandum book which the administrator had in his pocket, and in which he kept memoranda in the estate matters, and then and there made this memorandum in writing: "2 B||c. Wyatt Evans, @ 10c., Bo't Jan. 27th, 1891." This was not signed by any one. Defendant agreed to haul the cotton to Quick's store by the following Saturday, when it was to be weighed, the amount due Odom for rent by the defendant was to be taken out, and the balance credited to defendant's account with the estate of Quick.

On the following Saturday, when the administrator, plaintiff, in company with his attorney, went up to Quick's store, the cotton was not there, the defendant refusing to haul and deliver it. The plaintiff then sent his wagon to defendant's house for the cotton, but defendant refused to deliver it to him. Some further negotiations were had then about the cotton, the defendant offering to give up the cotton if Mr. Smith would give him a clear receipt showing full payment of his account with the Quick es-

tate. This was refused ; but the proposition was made him that his account would be reduced by $10, if he would settle without further trouble. He refused. He was then told that the law must decide as to the ownership of the cotton. Suit was begun on February 2nd, and the cotton in dispute was seized. The value of the cotton was $75 or thereabout, by estimation. It has not been weighed.

This being a contract for the sale of personal property above the value of fifty dollars, in order for plaintiff to recover he must show either that he accepted part of the cotton sold and actually received the same, or that he gave something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the bargain, signed by the party to be charged, or his agent, was made. It is not contended that anything was given in earnest, nor that part payment was made, or that a sufficient memorandum was made and signed. Plaintiff claims, however, that this case is taken out of the statute of frauds; contending that the plaintiff did accept, and actually receive, the cotton. In other words, he contends that the cotton was delivered on January 27th, at defendant's house, when defendant said that it was a trade, and the cotton was Smith's, and that defendant's agreement to haul the cotton to Quick's store on the following Saturday was the agreement of a bailee, and that his possession after January 27th was the possession simply of a bailee.

Upon the question of delivery, it is a principle that runs through all of the cases to which I have been referred by counsel for defendant, and that I have been able to find, that in the sale of personal property, where anything remains to be done, as between vendor and vendee, for the purpose of ascertaining either the quantity, value, or quality, as weighing, &c., there is no delivery. *Vide Shindler* v. *Houston*, 1 N. Y., 261, and authorities there cited. In the case at bar the cotton had not been weighed, and the plaintiff and defendant, although it was settled as to the price per pound, could not have known what amount was to be paid defendant or credited on his account until the weight of the cotton was ascertained by weighing. I think the defendant still had an interest in the cotton until it was actually weighed ; and there was not such acceptance and actual receipt

of the cotton by the plaintiff as would take the case out of the statute of frauds.

It does not appear from the evidence that the plaintiff ever exercised any control over the cotton, or that the two bales were pointed out to plaintiff, but the testimony shows that three bales were lying side by side, some distance from plaintiff.  Had the plaintiff offered a price for the two bales of defendant's cotton in bulk, as, for example, if he had offered $75 for the cotton, so that nothing was to be done to the cotton to ascertain what was to be paid to defendant, and he (defendant) had accepted the offer, under these circumstances the plaintiff's title might be sustained under the authority of the case above cited; but I regard the present case as settled by the decision cited in the case of *Shindler* v. *Houston*.  Benj. Sales, § 319 *et seq.*   In all the cases and authorities cited both by counsel for plaintiff and counsel for defendant it is stated as a settled principle that if anything remains to be done to ascertain the price, quantity, quality, or weight, &c., especially if the price depends on weight, there is no sale until this is done.  In this case the cotton had to be weighed, and hence the sale was void under the statute.

Holding this to be the law, I must hold that there was no sale in this case, and the plaintiff is not entitled to recover, and, It is therefore ordered, that the defendant have judgment against the plaintiff for the return of the property described in the affidavit in this case, and in case a return cannot be had, then for $75, its value, and for costs of suit.

The decree of the trial justice was affirmed by the Circuit Court, and plaintiff appealed on the single ground stated in the opinion.

*Messrs. T. E. Dudley* and *Knox Livingston*, for appellant.

*Mr. H. H. Newton*, contra.

April 13, 1892.   The opinion of the court was delivered by
MR. JUSTICE McGOWAN.   This was an action of claim and

delivery for two bales of cotton of the alleged value of $75. The plaintiff alleges that this property belongs to him, and he is en- titled to the possession thereof, but it is wrongfully withheld from him by the defendant. The defendant answers, first, by a gen- eral denial ; and second, by plea of the statute of frauds, that there was no sale and delivery of the cotton. The case was first heard by S. W. G. Shipp, Esq., a trial justice of Marlboro Coun- ty. There was much testimony *pro* and *con*, which is all printed in the "Brief." The trial justice made a full and clear state- ment of the facts, and his judgment of the law involved was so clear and satisfactory, that we adopt it, and hope the reporter will have it printed as the report of the facts of the case. He held that there was no legal sale and delivery, and that the plain- tiff could not recover, and he gave judgment for the defendant for the return of the property, and in case a return could not be had, then for $75, its value, and for costs.

From this decree the plaintiff appealed to the Circuit Court, the Court of Common Pleas of the county, for a new trial on various grounds, but principally upon the ground that there was such an acceptance of the cotton as constituted a compliance with the statute of frauds. His honor, Judge Izlar, heard the case on the papers, and held that, "it appearing to the court that the grounds of appeal are not well taken, that the testimony shows that there was not such a delivery of the cotton in question as is required by the statute of frauds in such case provided, it is ad- judged and ordered, that the judgment of the trial justice be affirmed, and the case remanded to him for the purpose of carry- ing into effect said judgment, and that the appellant pay the costs of this appeal." From this decree of the Circuit Court the plain- tiff has again appealed to this court upon the ground that "His honor, the Circuit Judge, erred in holding that there was not such a delivery of the property in question as is necessary to constitute a valid sale under the statute of frauds."

We have read the testimony carefully, and we cannot say that the judge erred in his concurrence with the trial justice, that there was not such a delivery of the cotton as is required by the statute of frauds. "Where, in an agreement for the sale of personal property, something remains to be

done, as between vendor and vendee, for the purpose of ascertaining either quantity, value, or quality, such as measuring, weighing, or counting out of a common parcel, there is no delivery." *Shindler* v. *Houston,* 1 N. Y., 261, and a number of other cases.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.