MINTON *v.* McDANIEL.

4-8366                                                   207 S. W. 2d 617

Opinion delivered December 22, 1947.

*D. H. Crawford,* for appellant.

*Agnes F. Ashby* and *J. H. Lookadoo,* for appellee.

HOLT, J. Appellee, Ted McDaniel, brought this action against Ira Minton (appellant) to recover damages for an alleged breach of a contract for the sale of cotton.

He alleged in effect that he entered into an oral contract May 14, 1946, with appellant whereby appellant sold him twenty-four bales of low grade cotton at eighteen cents a pound, which he (appellee) resold to Little Rock brokers; that appellant failed to live up to the contract and refused to surrender possession of the cotton to him; that he, appellee, "made every effort to buy the cotton at the price defendant (appellant) had agreed to sell it to him, but due to an advance in the cotton market the plaintiff was unable to purchase the cotton at that price and was forced to pay $35.25 extra for each of the twenty-four bales he had sold the brokers in Little Rock." That as a result he was damaged in the sum of $846 on account of appellant's failure to live up to the contract.

Appellant interposed a general denial and affirmatively pleaded the Statute of Frauds as a defense.

From a jury's verdict in the amount of $846 in favor of appellee comes this appeal.

Appellant admitted that he sold not a part, but all of the twenty-four bales of cotton involved here to appellee on an oral contract at eighteen cents per pound, but contends that he never made such delivery of any part of the cotton to appellee as would take the contract of purchase out of the Statute of Frauds (§ 6061 of Pope's Digest), and therefore that the contract was unenforcible. This was the real issue in the case.

The facts upon which the suit was based were to the following effect. Appellee testified that he had been in the cotton business since 1929. Mr. Minton had 24 bales of low grade cotton he had been trying to buy for some weeks, so he went by to see him and told him he thought he could get eighteen cents for it and they agreed on that price; that they went out to his gin and got the samples which appellee took with him and sold it, and came back and gave appellant instructions where to ship it. Appellee took the samples to Little Rock and sold the cotton to Rauch & Turner, and came back and told appellant he could ship it to either Hope or Little Rock, but Hope was preferred, and he could draw on him at Arkadelphia with compress receipts attached, and appellant agreed. He waited about two weeks, but the draft didn't come in and he stopped by to see Mr. Minton. "Q. Every time you stopped, was he still going to let you have it? A. Yes, sir, as soon as it got dry. Q. There was no argument about the contract? A. No, sir, and it goes on somewhere about, I would say 30 days, maybe six weeks, after that and I stopped by and Mr. Minton wasn't there and one of the ladies or the boy there told me they carried a truckload—I don't know whether it was all of it or how many bales, but they were delivering the cotton that day. Q. That was the cotton you had bought? A. Yes, sir. Q. That was at the Hope Compress according to your contract? A. Yes, sir, and a week or two after that, he still

hadn't drawn on me for the cotton and I stopped by again and Mr. Minton told me he had carried a truckload of the cotton down there—anywhere from five to ten bales—five, six or seven bales of the cotton and then they run into wet cotton and the Compress wanted to dock him so much for it, he didn't feel like putting it in and being docked so much for it, he didn't bring the balance down there, and I said, Mr. Minton, I would put it all under the shed, the ginning season is all over with, and I would put it inside the gin house. I told him I would put it under the shed and let it dry out. Q. Did he do that? A. Yes, sir. Q. That was the cotton you had bought? A. Yes, it was the cotton I had bought—that is all that he had at the gin. He had delivered five or six or seven bales of it.''

Appellant testified: ''Q. They did accept five or six bales? A. For me, yes, sir. Q. That was cotton that you agreed to sell to Mr. McDaniel? A. I wouldn't be sure about it. It was some cotton recently ginned—this other cotton had been ginned two months before that. Q. You did tell Mr. McDaniel that you took five or six bales of it down there? A. Of that load, yes, sir. Q. And you told him to wait until you got the rest and at that time you meant to let Mr. McDaniel have the cotton? A. If the compress had taken the cotton, I would have sold it to Ted. . . . It was the understanding, I would either put it on the platform and get railroad bill of lading or deliver it to the compress. . . . Q. Did you have some other cotton other than the 24 bales? A. No, sir. Q. That was all the cotton you had? A. Yes, sir.''

The court, in effect, correctly told the jury that if it found any part of the cotton in question had been accepted and actually received by the appellee, then appellee should recover.

On the evidence presented, we think it was for the jury to determine whether a partial delivery of the cotton had been made.

The general rule appears well settled that there may be a delivery sufficient to take the transaction out of the

Statute of Frauds even though the actual possession of all or part of the goods remain in the seller.

American Jurisprudence, Vol. 49, p. 592, § 277, states the rule as follows: "Where Goods Remain in Possession of Seller.—A transaction may be brought within the exception of the statute applicable to the acceptance and receipt of goods pursuant to an oral contract of sale, notwithstanding actual possession of the goods remains in the seller. Even though the statute specifically provides that there must be an actual receipt, it is well settled that the statute does not mean that the goods must pass into the custody of the purchaser. There may be an actual receipt notwithstanding the custody remains unchanged. It is sufficient if the custodian holds them in a different character or capacity, for instance, as agent or as bailee of the buyer. The question whether there has been a delivery and actual receipt, where the goods remain in the custody of the seller, is one of the sufficiency of the evidence, so that varying results have been reached in particular cases involving factually such transactions as sales of horses, cattle, oxen, or sheep, hay, growing timber, lumber or wood, produce, corn, cotton, etc., stock in trade, goods in store or warehouse, dresses and clothing left for alterations, and various miscellaneous items and chattels. In all cases the proof must be clear and unequivocal, and establish an actual change of the relation of the parties to the property."

In 37 C. J. S., p. 641, § 159, the author says: "The acceptance and receipt may be by the buyer or by one authorized by him. The acceptance and receipt which the statute of frauds requires must be by the buyer himself or by someone authorized to accept and receive in his behalf. When delivery is made to a third person, under the direction of the buyer that such shall be done, this is sufficient to take the case out of the statute."

Here, according to appellee's testimony, which the jury accepted as true, it was agreed that the cotton should be delivered to appellee at the Compress at Hope. The appellant actually carried at least five bales of cotton and

unloaded it on the platform of the Compress at Hope with the admitted intention of delivering it to appellee in accordance with the contract. It was a sale on credit—no lien was claimed by appellant.

In these circumstances, the jury was justified in finding that there was therefore accomplished a partial delivery and this would satisfy the requirements of the Statute of Frauds, and whether, as claimed by appellant, after said partial delivery he went back to the Compress and repossessed and removed the cotton, did not destroy the effect of such delivery in the circumstances here.

When we give, as we must, the strongest probative force to all the testimony and every reasonable inference deducible therefrom in favor of appellee and the jury's verdict, we are unable to say that there was no substantial testimony to support the jury's finding that there was accomplished a partial delivery which satisfied the requirements of the Statute of Frauds.

Finding no error, the judgment is affirmed.

The Chief Justice concurs.

ED. F. McFADDIN, Justice (dissenting). I respectfully dissent from the majority opinion, because the facts—as I see them—do not bring this case within the rule of "partial delivery," as those words are used in cases involving the statute of frauds. To constitute partial delivery, either the actual or the legal possession of the property—claimed to be delivered—must have passed from the seller to the buyer. The evidence in this case shows the entire absence of such essential. Minton had 24 bales of low-grade cotton; and here is McDaniel's testimony:

". . . and I told him, 'I think I can sell the cotton for you in with my cotton. . . . I can get 18 cents for you.' . . . and we agreed at 18 cents and we drove out to his place of business . . . to get the samples, and I took the cotton samples with me, and I sold it (cotton), and I came back and gave him shipping instructions where to ship it. . . . I said, 'You

can ship it to Little Rock or you can ship it to Hope.'
. . . and I told him to take it to Hope and draw on
me with the compress receipts attached here at Arkadel-
phia . . . and the draft never did come in.''

McDaniel's testimony is the only evidence in the rec-
ord even claimed to look towards a partial delivery of
the cotton. Minton delivered some cotton to the compress
at Hope, but held the compress receipts, and never at-
tached those receipts to a draft. I consider the nego-
tiable compress receipts to be the best evidence of the
ownership of the cotton after it was delivered to the
compress, and until the negotiable compress receipts
passed out of the control of Minton, there was no par-
tial delivery. The mere delivery of cotton to the com-
press was no delivery to McDaniel, because the compress
receipts were never delivered. The Uniform Warehouse
Receipts Act (§ 14413, *et seq.*, Pope's Digest) makes the
negotiable warehouse receipts the *indicia* of title.

Furthermore, McDaniel practically conceded that he
never received the cotton, because several months after
his original conversation with Minton, and after Mc-
Daniel began to doubt whether Minton would ever de-
liver any of the cotton to him, McDaniel testified that
he went back to Minton in an effort to get the cotton.
Here is McDaniel's testimony:

'' . . . I said, 'to get it over with, and to treat
you right about it, you have got a few bales in the ware-
house, and *if you will let me have those,* I will take the
rest here on the platform and absorb the loss to clear
it up, and we will either weigh it on your scales or get
someone else to weigh it.' In other words, I was taking
all the loss in weights that he might have in order to get
it closed, and he said, 'I will see about it,' and I waited
a day or two longer and I went by and he told me frankly
that he wasn't going to deliver the cotton. (Italics our
own.) This testimony is an absolute admission by Mc-
Daniel that he never had delivery of the cotton. He said
of the compress receipts: '' . . . if you will let me
have those.'' That statement shows that he never re-
ceived the receipts or any of the cotton.

598

On McDaniel's testimony—and there was no other in the record on this point—there was no evidence of a partial delivery; and so I think the statute of frauds was a valid defense. On the basis of "living up to his word," Minton should have delivered the cotton. But the statute of frauds is a legal defense; and with that defense pleaded by Minton, as it was, I am of the opinion that the evidence did not show any partial delivery so as to take the case out of the statute of frauds.

It is not claimed—and it could not be sustained, even if claimed—that the delivery of the samples constituted a symbolic delivery of the cotton. The rule of symbolic delivery does not extend to cotton samples. See 27 C. J. 250; *Smith* v. *Evans*, 36 S. C. 69, 15 S. E. 344; and annotation in 4 A. L. R. 914. Neither do the facts in the case at bar allow the appellee to rely on the case of *McKinncy & Sons* v. *Ragland*, 163 Ark. 96, 259 S. W. 17.

For the reasons stated, I respectfully dissent from the majority.