**James McMANUS, Plaintiff,**

v.

**MIDLAND VALLEY LUMBER CO., a corporation, Defendant.**

**Civ. A. No. 8239.**

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 15, 1964.

J. D. Parler, Thomas O. Berry, Jr., St. George, S. C., for plaintiff.

Walker, Walker & Jenkins, Summerville, S. C., Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., for defendant.

HEMPHILL, Chief Judge.

This action, heard by the Court without a jury, at Charleston, South Carolina, August 4, 1964, joins issues on a claim for actual damages arising out of claimed breach of contract between the parties. After taking the testimony and hearing arguments of counsel, (trial briefs being before me and considered) I have determined the following:

FINDINGS OF FACT

1. NALLEY LUMBER CO., INC., a South Carolina Corporation, whose President was J. Larry Nalley was, until devastated by fire in March of 1963, engaged in sawing hardwood logs into lumber at its plant at or near Summerville, S. C. Midland Valley Lumber Co., a Missouri Corporation, financed Nalley in this operation. Plaintiff, of Charleston, S. C., was in the logging and lumber business.

2. After the fire further sawing operation was impractical, and Midland sought ways to dispose of the stock of logs remaining in order to liquidate an admitted $14,257.97 invested in the logs. One R. R. Gullett, experienced logger from Louisiana was retained to dispose of this stock. It appears that almost a

month elapsed before an agreement was reached with plaintiff for disposal of the logs. This agreement, reduced to writing, was as follows:[1]

"NALLEY LUMBER CO., INC.
Band Sawn Hardwoods
P. O. Box 564
Summerville, S. C.

April 26, 1963

We have agreed to sell all hardwood logs located on Nalley Lumber Co. yard at Summerville, S. C. to and through James McManus at $40.00 per MBf Doyle scale. Mr. McManus to start moving logs no later than monday April 29th 1963. All payment on logs to be made to Midland Valley Lumber Co. The above price agreed to by J. Larry Nalley President of Nalley Lumber Co.
Mutual Scale

Nalley Lumber Co.
/s/ J. Larry Nalley
J. Larry Nalley—President

Midland Valley Lumber Co.
/s/ R. R. Gullett
R. R. Gullett"

———————◇———————

Present at the signing of the agreement was one James E. Bailey, who was a purchaser of logs for Nalley.

On April 29 plaintiff sent two trucks and removed logs sold to Drexel Furniture Co., Drexel, North Carolina, for which Midland received $123.28 @ $40.00 thousand feet and plaintiff received $30.00 per thousand. Plaintiff continued to move logs through May 2, 1963 when he was stopped by Gullett. There was no dispute that Gullett was the agent of Midland. During the brief period of operation plaintiff hired other trucks to assist in the removal of the logs; in each instance Midland received the $40.00 per thousand and plaintiff received whatever profit his sale price amounted to over that figure.

Gullett claimed that plaintiff was disposing of only the better logs and that he insisted that plaintiff put up bond, to which Gullett claims plaintiff agreed but did not perform. Gullett claims that he stopped plaintiff's removal after this noncompliance. Plaintiff disputes this.

There is no dispute about the effort of McManus to remove, nor that he was stopped by Gullett. Plaintiff claims 335,764 board feet[2] were involved; defendant claims 298,261. Plaintiff claims a net total due of $11,642.61 on logs he could have sold at a profit; after stopping plaintiff defendant disposed of the logs remaining for $8659.55. These figures reveal a discrepancy of 11.2%. Since the defendant's figures were from actual scalings we use defendant's figures, at $30.00 profit per thousand, plaintiff could only realize gross profit of $9314.08. Included in this profit, admittedly would be costs of hauling. Dispute was had as to such costs, but plaintiff, who did the hauling affixed costs at ⅔ of the $30.00 profit or 40%. Since plaintiff did not haul after Gullett stopped him he cannot collect for any loss unexpended. Plaintiff then would be limited to a recovery of 60% of $9314.08 or $5588.44. It is singular that although defendant only realized $8659.55 for the logs,[3] that there was no dispute that plaintiff received a profit on the logs he was allowed to sell.

1. Plaintiff's exhibit No. 1.

2. Described in the contract as MBf.

3. Figure given by Midland Secretary-Treasurer Wetsell.

There was some dispute as to the quality on affecting the ability of plaintiff to sell for a profit. After listening to the testimony, the Court finds as a fact the figure of $30.00 a thousand is reasonable. The reasonableness of these calculations is emphasized by the offer of Mr. McKittrick of Laurens to pay McManus $70.00 a thousand for the logs and the statement of Gullett to Nalley [4] that McManus was going to make five or six thousand dollars on Midland's money.

### CONCLUSIONS OF LAW

Plaintiff and defendant entered into a binding written contract for the sale of the logs. This contract meets both conditions of Section 11-103 of the South Carolina Code of Laws for 1962 as amended.[5] See Smith v. Evans, 36 S.C. 69, 15 S.E. 344. After McManus had been prevented from performing he was no longer obligated to perform.

There was no oral rescission of the written contract. The parties to a written contract may modify it orally and may rescind it in the same manner, but the agreement should be clear, positive and above suspicion.[6] Such is not the case here.

The measure of damages for breach of contract is loss actually suffered by contractee as a result of breach. South Carolina Finance Corp. of Anderson v. West Side Finance Co., 236 S.C. 109, 113 S.E.2d 329. The damages here are the profits that have been prevented or lost.

### JUDGMENT

Plaintiff is entitled to judgment against defendant in the sum of Five Thousand Five Hundred Eighty Eight and 44/100 ($5588.44) Dollars.

Defendant shall pay the costs.

And it is so ordered.

---

4. Related by witness Bailey for plaintiff and denied by neither Gullett nor Nalley.

5. Section 11-103 reads: "Contracts for sale of goods for fifty dollars or more.— No contract for the sale of any goods, wares and merchandise for the price of fifty dollars or upwards shall be allowed to be good unless (a) the buyer shall accept and actually receive part of the goods so sold or give something in earnest to bind the bargain or in part payment or (b) some note or memorandum in writing of the bargain be made and signed by the parties to be charged by such contract or their agents thereunto lawfully authorized."

6. See 12 Am.Jur. p. 1012; Contracts § 432.